[S. F. No. 16002.   In Bank.—June 28, 1938.]

ALBERT WALLIS et al., Petitioners, v. BOARD OF CIVIL SERVICE COMMISSIONERS OF THE CITY OF LOS ANGELES et al., Respondents.

Haas & Home for Petitioners.

Ray L. Chesebro, City Attorney, Leon T. David, Assistant City Attorney and John Beardsley, Deputy City Attorney, for Respondents.

SHENK, J.—This is an original proceeding in *mandamus* to compel the respondent officers of the city of Los Angeles to approve and audit the payroll of the department of water and power of the city of Los Angeles in so far as it affects the petitioners, and cause to be paid to them the sum of $72 each on account of compensation for services rendered as carpenters in said department for the first half of February, 1938. As the return to the alternative writ is a general demurrer to the petition, the facts are undisputed.

For many years the Los Angeles Gas and Electric Company, a public utility corporation, owned and operated an extensive distributing system for furnishing electricity to the residents of the city of Los Angeles for domestic and commercial purposes. This distributing system was maintained and operated by the company for many years before the establishment by the city of Los Angeles of its municipally owned electrical system under the charge, supervision and control of the board of public service commissioners of said city. After the establishment of the city's system the businesses of the two systems were in competition in the city and the question of the acquisition by the city of the electrical distributing system of the public utility corporation was a matter of frequent if not constant discussion and agitation. Numerous controversies of considerable moment had developed and were pending at the time of the submission by the city council to the voters of the city of a series of

elaborate amendments to the freeholders' charter of the city designed to accomplish the settlement of all the controversies between the corporation and the city and the purchase by the city of the corporation's electrical distribution system and plants for a base price of $46,340,000. The proposed charter amendments were ratified by the voters of the city at an election held for that purpose on December 8, 1936, and were approved by the legislature on January 8, 1937. (Stats. 1937, pp. 2572–2631.) Theretofore, in 1935, and in anticipation of the acquisition of the utility property by the city, the city charter had been amended by adding section 431, reading as follows: ''Sec. 431. All persons employed in the operating service of any public utility hereafter acquired by the city, or any department thereof, at, and for at least one year immediately prior to, the date of such acquisition may be retained and employed by the City, or such department, in their respective positions, as nearly as may be, and so long as continuously so retained and employed in such positions, shall be exempt from the civil service provisions of this charter; provided, however, that no person not a citizen of the United States shall be so retained and employed and that persons so retained and employed shall, within three months after such acquisition, conform to any residence requirements applicable to employees of said city, or department, in like positions.'' (Stats. 1935, p. 2356.)

It is apparent from the allegations of the petition that during the campaign for and against the charter amendments to be voted on at the election of December 8, 1936, the question became acute as to what would be the fate of the employees of the public utility corporation with reference to their employment in the event the charter amendments be adopted and the employment of the corporation's employees be terminated upon the acquisition by the city of the electrical distributing system. To meet this situation, and prior to the election of December 8th, the board of water and power commissioners adopted and made public the following resolution:

''WHEREAS, it is contemplated that a charter amendment will be submitted to the voters of the City on December 8, 1936, which provides, among other things for the purchase of the electric system of the Los Angeles Gas and Electric Corporation by the City of Los Angeles through the Department of Water and Power; and

"WHEREAS, it is provided by section 431 of the Charter of the City of Los Angeles that all persons employed in the operating service of any public utility hereafter acquired by the city, or any department thereof, at, and for at least one year immediately prior to, the date of such acquisition, may be retained and employed by the city, or such department, in their respective positions, as nearly as may be, and, so long as continuously so retained and employed in such positions, shall be exempt from the civil service provisions of the charter, subject to the provision that no person not a citizen of the United States shall be so retained and employed, and that all persons so retained and employed shall, within three months after such acquisition, conform to any residence requirements applicable to employees of said city, or department, in like positions; and

"WHEREAS, it appears desirable that this Board should define its policy with reference to the employment of persons who at the time of the acquisition of said electric system, if consummated, may be employed by said Corporation, and whose employment by said corporation may be terminated by such acquisition; and

"WHEREAS, the Chief Electrical Engineer and General Manager has reported to this Board that after a careful survey of the work of the Department and of the system and organization of the Corporation it appears that substantially all of the employees regularly employed in the operating service of said Corporation, and devoting their time to the work of the electrical division of said Corporation, will be required in addition to the regular employees of the Department in the operatng service of the consolidated system;

"NOW, THEREFORE, BE IT RESOLVED that it is the sense and intention of this Board that upon such acquisition this Board should and will exercise the power granted to it by said section, in accordance with said report."

Following the favorable vote on the charter amendments and the acquisition of the electrical distributing system of the Los Angeles Gas and Electric Company, and in order to carry out in good faith the purpose and intent of section 431 of the charter and the foregoing resolution, the board of water and power commissioners employed certain persons who had formerly been employed in the operating service of the utility for at least one year immediately prior to the acquisition of the utility's property by the city and were other-

wise qualified to continue in service, and elected to retain them in their respective positions. They were continuously so retained and were, by appropriate order of the commission, ordered paid for their services. It is clear that they should be so paid unless the record discloses a compelling reason why they should not.

Section 120 of the charter provides that the controller shall not approve any salary or compensation for services to any person holding or performing the duties of a position in the classified civil service, unless the payroll for such compensation bear the certificate of the board that the person named has been employed in accordance with the civil service provisions of the charter and the rules established thereunder and the payroll be approved by the civil service commissioners.

The payroll, including the petitioners' compensation, was certified by the board of water and power commissioners in all respects as required by the rules governing that board, but the civil service commissioners refused to approve the same, basing their refusal on the requirements of rule XVIII, section 15, adopted by the civil service commissioners prior to the enactment of section 431 of the charter in 1935. The rule reads as follows: ''Where exempt or non-Civil Service employees and classified employees are performing work of the same grade and class within a department and a suspension for lack of work, lack of funds or abolishment of position is to be made, no Civil Service employee may be suspended until all such exempt persons are laid off.''

It is alleged in the petition and is therefore admitted that the petitioners were employed by the public utility corporation in carpentry and similar work for one year prior to the acquisition of the distributing system by the city and that they were continuously employed by the city in that work after such acquisition. It is also alleged and admitted that during the period in which the petitioners performed the work for which they are demanding payment there were persons on the civil service list of the city as carpenters, certified to the department of water and power, and in the same classification as the petitioners, who had been laid off by the department for lack of work while the petitioners were retained as carpenters.

The question presented is the scope to be accorded the exemption from civil service provisions of the charter as provided by section 431 of the city charter. The question does

not involve the right of the petitioners as former employees of the utility to permanency in tenure of their employment, for clearly they have no such right except to the extent that the employer, the board of water and power commissioners, elects to continue them in employment under the prerequisite conditions provided by section 431, which conditions are here present. ■ The provisions of that section merely confer the power on that board, in its discretion to employ former employees of the utility under those conditions. When the conditions are present, as here, and the employing board has elected to exercise that power, the persons employed are exempt from all the civil service provisions of the charter, which would necessarily include any rule adopted by the civil service commissioners pursuant to the civil service provisions of the charter. To hold otherwise would be to accord greater force to the rule than to the charter itself and to nullify the latter.

■ The clear purpose and intent of the exemption contained in section 431 of the charter and the action of the board thereunder was to render the employees of the department, situated as we find the petitioners, exempt from civil service only in the event that they are ''continuously so retained and employed''. The board may discharge or suspend such employees at its pleasure. The civil service rule would force a suspension contrary to the charter power to continue them in service. Such suspension under the preference rule of the civil service commission is entirely inconsistent with the continuity of service required by the charter in order that the petitioners have any standing at all as employees of the department. Such a limited and restricted exemption probably does not obtain with reference to any other employees of the city exempt from civil service. It is a special provision applicable to the class to which the petitioners belong. The people of the city have so provided in their charter and there can be no question of their power so to do.

The duty of the respondents to certify, audit and pay the warrants drawn by the board of water and power commissioners for the payment of the compensation of the petitioners has been sufficiently shown.

Let the peremptory writ issue as prayed.

Curtis, J., Waste, C. J., Seawell, J., Houser, J., and Langdon, J., concurred.

EDMONDS, J., Dissenting.—I cannot agree with a decision which takes away the rights of civil service employees in the Department of Water and Power and allows them to be replaced by persons who worked for the Los Angeles Gas and Electric Corporation before its electrical distributing system was taken over by the city of Los Angeles. The result is that persons who have spent years in the city's service and have acquired civil service rights, with seniority and other privileges, may be ousted in favor of the private corporation's former employees. In my judgment, the provisions of the city charter expressly forbid such a conclusion, which is also contrary to all principles of civil service.

For many years the city has had exempt or noncivil service employees who constitute a special group of workers. The rule of the Board of Civil Service Commissioners, adopted pursuant to the provisions of the charter (sec. 125; Stats. 1933, p. 3146) gives civil service employees preference over the others. Under it "no Civil Service employee may be suspended until all such exempt persons are laid off". When the city was about to take over the distributing lines of the private corporation the question as to how it could man the property to be acquired was an important one. The persons who had been operating the private system were just as necessary, for the time being at least, as the physical property. Obviously for some time after the competing system was purchased the city would require the services of hundreds of persons not only skilled in various trades and occupations but also familiar with the electrical distributing system of the company by which they had been employed. The then existing charter provisions and regulations of the Board of Civil Service Commissioners did not give the necessary authority for bringing such a large group of new employees into the city's service as exempt employees, and presumably it would have been impractical to require civil service examinations.

The charter amendment approved by the voters of the city in 1935 provided the solution for this difficulty. Under its terms persons employed in the operating service of the public utility which the city acquired "may be retained and employed . . . in their respective positions, as nearly as may be, and so long as continuously so retained and employed in such positions, *shall be exempt from the civil service provisions of*

*this charter . . . "* The purpose of this amendment is clear. Under its provisions the city was authorized to employ as persons "exempt from the civil service provisions of this charter" those who had formerly worked for the private corporation. But the Board of Water and Power Commissioners by taking over employees of the private corporation could not give them a civil service status. The new employees were not given any permanency of tenure, nor were they given the right to oust civil service workers. They came into the service of the city at a time when the charter specified that when a suspension for lack of work is to be made, and this is the situation which occasioned the present controversy, civil service employees are to be retained in preference to exempt persons. This policy is consistent with the purpose of civil service and protects seniority rights. (*Ford* v. *Department of Water and Power,* 4 Cal. App. (2d) 526 [41 Pac. (2d) 188] ; *Lotts* v. *Board of Park Commrs.,* 13 Cal. App. (2d) 625, 626 [57 Pac. (2d) 215].)

The resolution of the board of water and power commissioners adopted prior to the election at which the question of the acquisition of the private utility system was to be voted upon could not modify or supplant the provisions of the city charter even though it was passed in aid of the campaign to purchase the private system. Moreover, nothing in this resolution assumes to do so. It merely recites that the board will carry out the provisions of the proposed charter amendment, allowing it to employ those in the service of the private corporation, at the date of the acquisition of its property, as exempt workers. Indeed, the resolution quotes the proposed charter amendment in full.

The petition should be denied.