[Civ. No. 13883.   Second Dist., Div. Three.   July 28, 1943.]

FRED G. RISLEY et al., Appellants, v. BOARD OF CIVIL SERVICE COMMISSIONERS OF THE CITY OF LOS ANGELES et al., Respondents.

Entenza & Gramer and Marvin Wellins for Appellants.

Ray L. Chesebro, City Attorney, Frederick von Schrader, Assistant City Attorney, and George William Adams, Bourke Jones and Walter Carrington, Deputies City Attorney, for Respondents.

BISHOP, J. pro tem.—Plaintiffs for some years past have been in the service of the Bureau of Power and Light of the Los Angeles Department of Water and Power. They gained admission to this service by passing civil service examinations, and by virtue of the passing of the years have acquired,

under the provisions of the city charter, certain seniority rights which give them an advantage when promotional examinations are held and preferential treatment when slackness of work necessitates a reduction in the working force. Now a group of over five hundred former employees of the Los Angeles Gas and Electric Corporation and of the Southern California Edison Company will become competitors of the plaintiffs for the preferential treatment and advantages which go with seniority rights if section 126, added to the city charter in 1941 (Stats. 1941, p. 3501) is permitted to have its way. This section reads: ''Except as otherwise provided in Section 111 hereof, every person who is, on the effective date hereof, retained and employed by the City or any Department thereof pursuant to the terms of Section 431 of this Charter, shall forthwith be and become a member of the classified Civil Service of the City of Los Angeles as defined in Section 100 of this Charter, and shall be conclusively deemed to have been regularly appointed to the position in the class in which he is so retained and employed and to have served, in that position and class, the probationary period prescribed in Section 109.

''Every such person shall be conclusively presumed to have served in the class and in the department and major division in which he is so retained and employed on the effective date hereof, for the total of the following periods:

''1. The actual length of time, not to exceed three years, such person was employed in the service of the public utility acquired by the City or any department thereof, regardless of the duties performed, or the titles held by such person in such service.

''2. The total length of his service in the class and in the department and major division in which he is so retained and employed on the effective date hereof.

''The total of such service as specified in subdivisions 1 and 2 hereof, shall also be deemed to have been performed since original regular appointment to such class in the classified civil service. Where such person shall have taken and passed a civil service examination for the position in which he was theretofore so retained and employed and is on the effective date of this section retained and employed in such position, although classified as a civil service employee, he shall be entitled to and shall receive all of the benefits and rights granted by this section.

''Except as in this section otherwise specifically provided,

the provisions of Article IX of this Charter and of the rules and regulations of the Board of Civil Service Commissioners adopted pursuant thereto shall apply to persons so employed to the same extent and in the same manner as to all other persons employed in the classified civil service.''

To protect themselves against the invasion of those who, but for section 126, would be strangers to civil service, the plaintiffs have brought this action with its prayer that the section be adjudged void and that the steps necessary to carry its provisions into effect be halted. From a judgment denying them any relief, and affirming the validity of section 126, the plaintiffs have appealed. Our conclusion is that the section is not vulnerable to any of the attacks plaintiffs have made upon it.

This case may be said to be a sequel to *Wallis* v. *Board of Civil Service Commrs.*, (1938) 11 Cal.2d 430 [80 P.2d 972, 81 P.2d 428] (and see also *Austin* v. *Board of Civil Service Commrs.*, (1942) 50 Cal.App.2d 436 [123 P.2d 119].) There the section of the Los Angeles City Charter that was involved was section 431, providing that: ''All persons employed in the operating service of any public utility hereafter acquired by the city, or any department thereof, at, and for at least one year immediately prior to, the date of such acquisition, may be retained and employed by the city, or such department, in their respective positions, as nearly as may be, and so long as continuously so retained and employed in such positions, shall be exempt from the civil service provisions of their charter. . . . '' This section was added to the charter in 1935 (Stats. 1935, p. 2356) and thereafter the city had acquired the electrical distributing system of the Los Angeles Gas and Electric Company, and with it a considerable number of those employed in its operating service. A slack period developed in a branch of the city's service and some of the regular civil service employees of the department of water and power were laid off, while the newly acquired employees, who had not entered through the civil service gates, and were exempt from civil service, continued at work. The precise question before the court was whether the employees who were exempt from civil service, by reason of section 431, could lawfully be retained in service in preference to civil service employees at a time when a reduction in the number of employees was necessary. But for section 431, by other previously existing sections of the charter the department

would have been compelled to lay off employees not under civil service before dispensing with those who had a civil service status and appurtenant rights. In deciding that section 431 created a class of employees exempt from civil service who did not have to give way to civil service employees, when slackness of work required some to go, our Supreme Court stated (p. 435): "It is a special provision applicable to the class to which petitioners [formed L. A. Gas and Electric Employees] belong. The people of the city have so provided in their charter and there can be no question of their power so to do."

If the plaintiffs in the case before us are correct in the positions they take, then the Supreme Court was in error in its conclusion in the Wallis case, for section 431, as interpreted by the Supreme Court, is not to be distinguished from section 126, as regards the evils plaintiffs see in it. According to plaintiffs, section 126 is an unconstitutional attempt to impair the contracts they have with the city; its effect would be to deprive plaintiffs of their property without due process of law; it purports to grant priviliges and immunities to a class of citizens which are not granted to all; and, it is a special law granting special or exclusive rights, privileges and immunities.

We should note, first of all, that basically plaintiff's relation with the city of Los Angeles is not a contractual one, entered into after a meeting of the minds fixing the terms of the employment, including the usual terms concerning its duration, compensation, and the duties to be rendered. By the very provisions of the city charter upon which plaintiffs rely—those giving them civil service status (art. IX), with protection against discharge, other than for cause; with a right to review, if discharged or suspended; with promotional rights; etc., etc.—plaintiffs are filling positions created by and under the charter. These "positions" do not rise to the dignity of "offices," perhaps, because not "clothed with a part of the sovereignty of the state" (*People ex rel. Chapman* v. *Rapsey*, (1940) 16 Cal.2d 636, 640 [107 P.2d 388]), but they partake of the other attributes of "office," and lack those arising out of contract. (*Pacific Finance Corp.* v. *City of Lynwood*, (1931) 114 Cal.App. 509, 514 [300 P. 50, 1 P.2d 520].) We note just a few expressions used in article IX of the Los Angeles Charter to illustrate what is meant. We find repeated references to "positions" to which "ap-

pointments'' may be made. ''. . . in all cases where it is practicable . . . vacancies shall be filled by promotion.'' A transfer may be made ''from one position to another.'' All of these expressions connote a place, whether office or position is unimportant, ''that exists independently of the presence of a person in it'' because created by and under the charter, and not by virtue of an agreement of the parties, and so is a position or office and not a contractual relationship. (See case last cited and the authorities to which it refers.)

Plaintiffs' first two contentions may be considered together, as they involve the same fallacious concept, which is, that plaintiffs have a vested, contractual, right to have the terms of their employment continue unaffected by charter amendments. That they have rights, by virtue of the provisions of the charter, which the courts will protect against unauthorized infringement by the city or any of its legislative or executive officers or boards, is undoubtedly true, and is recognized in the large number of cases cited by the plaintiffs. But that these rights are vested, contractual, rights, protected by the state and federal constitutional provisions forbidding the impairment of contracts and the taking of ''property'' without due process, so that they cannot be changed, is not true, and none of the cases relied upon by plaintiffs holds it to be true. The rights to which plaintiffs would cling are created by or under the provisions of the charter and are dependent upon those provisions. They may all be lost by the repeal of the provisions or modified by an amendment to the provisions, at the will of those who determine what the charter's terms shall be.

The principle involved is not unknown in the appellate reports of this state. In *Cornell* v. *Harris*, (1936) 15 Cal. App.2d 144 [59 P.2d 570], the plaintiff, a deputy sheriff, sought to avoid a threat to his official life which he saw in an amendment to the San Diego County Charter providing for civil service. The situation is revealed in this statement of one of his contentions (p. 146): ''(1) That as he was appointed, qualified and took office under the provisions of the charter . . . before the civil service provisions of the charter became effective, he had a vested right to his office of which he could not be deprived in the manner contemplated here.'' Concerning plaintiff's position the court observed (pp. 146, 147): ''Plaintiff's first contention is answered by the case of *Boyd* v. *Pendegast,* 57 Cal.App. 504 [207 P. 713], where

it is said concerning the removal of a police officer of the city of Los Angeles: 'The possession of an office, or the enjoyment of employment with the government, or under any of its agencies, does not confer a vested property right of any quality whatsover. The more ancient offices to which the common law attached the property character of incorporeal hereditament find no legal counterpart under the political systems of government in this country.' "

In *Mansfield* v. *Chambers*, (1915) 26 Cal.App. 499 [147 P. 595], it was questioned whether or not the office of superintendent and cashier of the motor vehicle department had been abolished. In its discussion of the problem the court made these statements and quotations (p. 504): "It will not be disputed that 'a public officer, at least one whose term and compensation are not prescribed by the constitution, has no contract by which he can have or hold either his office or his salary against the legislative will.' (*Pennie* v. *Reis*, 80 Cal. 266, 269 [22 P. 176].) Or, as is said in *Miller* v. *Kister*, 68 Cal. [142] 144, [8 P. [813] 814]: 'Salaried public offices created by the legislature are not held by contract or grant. The legislature has full control over them, unless restricted by the constitution, and may abolish them altogether, or impose upon them new duties, or reduce their salaries.'

"Under the well-settled rule as thus stated, it will not for an instant be question that it lies within the legitimate power of the legislature to abolish at any time any public office created by it, there being no constitutional limitation upon the exercise of such power in the particular case by the legislature."

In *Butterworth* v. *Boyd*, (1938) 12 Cal.2d 140, 150 [82 P.2d 434, 439 [126 A.L.R. 838], this statement is made: "It is well settled that public employees have no vested right in any particular measure of compensation or benefits, and that these may be modified or reduced by the proper statutory authority." The principle is recognized in these further cases: *In re Carter*, (1903) 141 Cal. 316, 319 [74 P. 997]; *Ludolph* v. *Board of Police Commrs.*, (1938) 30 Cal.App.2d 211, 216 [86 P.2d 118, 121]; *Nider* v. *City Commission*, (1939) 36 Cal.App.2d 14, 30 [97 P.2d 293, 301].

As we have already stated, none of the cases relied upon by the plaintiffs and, we add, none of which we are aware, holds that rights such as plaintiffs have are "vested" in the sense that they are constitutionally immune from modification or destruction. We need not find fault with the use of the

word "vested," in such cases as *Eisenhuth* v. *Dept. of Motor Vehicles,* (1934) 2 Cal.App.2d 207 [37 P.2d 725, 728], where it appears in the sentence (p. 214) "That [civil service] tenure is a vested right is no longer open to question in this state," if we do not fail to see that a right may be vested so as to be the object of the court's protection, without being so vested that it may not be the subject of legislative control. As already noted, plaintiffs refer to many cases where the rights of those in the civil service are protected by the courts from unauthorized rules or ordinances or executive challenge. The basis of these decisions is not that the vested right may not be taken away or modified by the power which created it, but that the officer or board who has attempted to override it has not been vested with the right to do so. The thought is illustrated in this quotation from *Mansfield* v. *Chambers, supra,* 26 Cal.App. 499 [147 P. 595], following the portion of the opinion already quoted by us (pp. 504, 505): "The case of *Marquis* v. *City of Santa Ana,* 103 Cal. 661 [37 P. 650], cited by the petitioner, is not opposed to the views thus expressed. The decision in that case merely amounts to this: That a municipal office created by the legislature cannot directly or indirectly be abolished by a municipal corporation organized as such under the Municipal Corporation Act, which is a general law of the state. . . . But we think no one will question the proposition that, had the office of city assessor of Santa Ana been solely the creature of an ordinance passed by the governing body of that city in the exercise of corporate powers conferred upon it by the Municipal Corporation Act, which placed no restriction upon the corporation in that respect, such governing body could at any time abolish said office by ordinance, thus exercising the identical power within the sphere of its corporate jurisdiction that rests in the legislature with respect to offices created by it and as to the right to abolish which at any time no restriction or qualification is imposed by the constitution."

Nor in the field of the pension cases do we find a decision that causes us to doubt the correctness of our conclusion, although some things have been said which, if controlling, would be disturbing. We have particular reference to these words, found in *Dryden* v. *Board of Pension Commrs.,* (1936) 6 Cal.2d 575, 579 [59 P.2d 104, 106]: "It has been clearly held that the pension provisions of the city charter are an integral portion of the contemplated compensation set forth

in the contract of employment between the city and a member of the police department, and are an indispensable part of that contract, and that the right to a pension becomes a vested one upon acceptance of employment by an applicant. (*O'Dea* v. *Cook,* 176 Cal. 659 [169 P. 366] ; *Aitken* v. *Roche,* 48 Cal. App. 753 [192 P. 464] ; *French* v. *Cook,* 173 Cal. 126 [160 P. 411] ; art. XVII, sec. 183, Charter of the City of Los Angeles.)'' We do not find this statement controlling in our case because it is plainly dictum and the cases cited by the author of the opinion, which was not written in but was adopted by the Supreme Court, do not support the statement. The cases, where the question is before the court, agree that the right to a pension is not a part of a contract which, having been entered into, cannot constitutionally be altered. The leading case is that of *Pennie* v. *Reis,* (1889) 80 Cal. 266 [22 P. 176, 177]. The plaintiff was the administrator of the estate of one who for over ten years had had two dollars each month ''deducted'' from his compensation as a police officer under a statute which provided that upon his death the sum of one thousand dollars should be paid his estate. Within a month before his death the statute was supplanted by one with different terms. The plaintiff claimed that his intestate had a vested right to the thousand dollars, safe from legislative change. The Supreme Court held ''no''; (p. 269) : ''A public officer, at least one whose term and compensation are not prescribed by the constitution, has no contract by which he can have or hold either his office or his salary against the legislative will.'' The same conclusion was reached in *Clarke* v. *Police etc. Board,* (1898) 123 Cal. 24, 26 [55 P. 576], where, speaking of the Pennie case, the court stated : ''It was there held . . . that the act did not violate the Constitution of the United States, because the member of the police department had no contract which he could assert against the legislative will. The office was accepted with the distinct understanding that the Legislature may modify or amend all laws providing for his compensation during his term.'' The Pennie case was also cited by the court in *Butterworth* v. *Boyd, supra,* 12 Cal.2d 140 [82 P.2d 434, 126 A.L.R. 838], in support of the statement which we have already quoted from that case. See also *Richards* v. *Wheeler,* (1935) 10 Cal.App.2d 108, 115 [51 P.2d 436] ; *Jordan* v. *Retirement Board,* (1939) 35 Cal. App.2d 653, 656, 657 [96 P.2d 973, 976] ; *Sweesy* v. *Los*

*Angeles etc. Retirement Bd.*, (1941) 17 Cal.2d 356, 362 [110 P.2d 37].

So far we have been considering plaintiffs' first two objections to the validity of section 126. ██ Their next two objections may also be considered together; that is, that the section is obnoxious to section 21 of article I and to the nineteenth subdivision of section 25, article IV, of our state Constitution. Section 21, art. I reads: ''No special privileges or immunities shall ever be granted which may not be altered, revoked, or repealed by the Legislature, nor shall any citizen, or class of citizens, be granted privileges or immunities which, upon the same terms, shall not be granted to all citizens.'' In the nineteenth subdivision of section 25, article IV, we find: ''The Legislature shall not pass local or special laws in any of the following enumerated cases, that is to say: . . .

''*Nineteenth*—Granting to any corporation, association, or individual any special or exclusive right, privilege or immunity.'' Clearly section 126 violates neither of these provisions. Section 21 of article I must embarrass plaintiffs, for they have taken the position that special privileges, which have been granted to them, may not be altered by granting like privileges to others. Their emphasis is on the latter portion of the section, however. With respect to this, and to subdivision 19 of section 25, we find it unnecessary to do more than observe that those who, in the competitive business world, secured and kept their positions with public utilities for at least a year, thereby acquiring experience and as surely proving their fitness to continue as though they had passed a civil service examination, constitute a class which may, without constitutional objection, be accorded such special privileges as are accorded them by section 126. (*Cook* v. *Mason,* (1929) 103 Cal.App. 6, 9-11 [283 P. 891].)

Plaintiffs suggest that section 126 is unconstitutional on other grounds which we deem so lacking in merit that they need not be discussed. The trial court properly found the section to be intelligible and valid.

The judgment is affirmed.

Shinn, Acting P. J., and Wood (Parker), J., concurred.

Appellants' petition for a hearing by the Supreme Court was denied September 23, 1943.