29 Cal.Rptr. 158]

[Civ. No. 20853. First Dist., Div. One. Mar. 14, 1963.]

JOHN L. HUMBERT, Plaintiff and Appellant, v. CASTRO VALLEY COUNTY FIRE PROTECTION DISTRICT, Defendant and Respondent.

2

Kiriakis & Knowles and W. James Knowles for Plaintiff and Appellant.

J. F. Coakley, District Attorney, and Richard H. Klippert, Deputy District Attorney, for Defendant and Respondent.

BRAY, P. J.—Plaintiff appeals from a judgment in favor of defendant.

QUESTIONS PRESENTED

1. Did plaintiff fail to exhaust his administrative remedies?

2. Did defendant waive the requirement of appeal?

3. Did the complaint state a cause of action for breach of contract?

RECORD

The evidence is not in conflict as to the facts. The action is for damages for breach of an alleged oral employment contract. A general demurrer to the complaint was overruled. A trial was had. Judgment in favor of defendant was rendered on the court's determination that plaintiff had failed to exhaust his administrative remedies.

June 1, 1952, plaintiff was appointed as a fireman of the district by the district's board of fire commissioners. July 1, 1954, he was appointed to the rank of captain.

June 12, 1959, plaintiff and two firemen were suspended by the chief indefinitely without pay, pending a meeting of the board. The action was taken on the alleged grounds of insubordination and general unsatisfactory conduct. Article I, section 3, of the rules and regulations of the district governing the operation of the fire department, gives the fire chief the power to suspend any employee of the department for violation of the rules. Article XI, section 34, provides that dismissal from the fire department, subject to approval of the fire commissioners, may be a penalty for violation.

Plaintiff was informed by letter of his suspension and that his dismissal would be recommended at the meeting of the board. Upon receipt of the letter plaintiff called upon the chairman of the board and asked him to call a meeting of the board "to get it squared away before we had any publicity on it." The chairman made no promise. Then plaintiff and one of the suspended firemen retained Attorney Phillips to represent them. Plaintiff called upon two other commissioners, but apparently nothing transpired. Attorney Phillips arranged an "informal" meeting with Commissioner Rhodes and Chairman Peters for June 15. At the meeting, the two commissioners, the fire chief and two other attorneys were present. Plaintiff was not present. Nothing was resolved except that the commissioners offered to give the men a public hearing on June 17, if the men desired it. The two commissioners felt that plaintiff should be discharged. Attorney Phillips then advised plaintiff that it would be better if plaintiff accepted the discharge and did not avail himself of a hearing, as a hearing "would do nothing but damage him." The attorney then withdrew from the case.

Plaintiff, without counsel, attended the June 17 meeting. It began as a public meeting but was adjourned into an executive or private session. Plaintiff was called into the executive session, and handed a list of the charges against him. He disclaimed all guilt. He was asked to resign. He refused, stating, however, that if the charges were withdrawn he would go back to work for a week and then would resign or they could discharge him and he would not contest the discharge. Later the commissioners came out of the executive session and read a resolution discharging him and the other two men. At a public meeting of the commissioners in July and again at one in August, plaintiff "spoke out," asking the board to reconsider their action. The court found that at the August meeting testimony was taken and the

commissioners voted unanimously to sustain their former action.[1]

1. *Failure to Exhaust Administrative Remedies.*

Section 1 of article XII provides: "Any member suspended or removed from the service shall have *the privilege of appeal and hearing, following disciplinary action.*" (Italics added.) Section 2 provides: "Such appeals are to be in writing to the Fire Chief, not more than ten days after the disciplinary action has been received. Upon receiving an appeal, the Chief shall forward it to the Fire Commissioners within twenty-four hours."

Admittedly plaintiff filed no such appeal. He takes the position that having asked for and received the informal meeting of June 17 he complied with the administrative process. He thought that he had received all that the district would have afforded him in any event had he requested a hearing in writing under article XII. He admitted that he knew of the rule as to appeals. He now claims that the meeting of June 17 was not a hearing "harmonious with the requirements of due process of law." Contradictorily, he contends that the district may not now deny that it was a hearing conducted at his request, thereby excusing him from filing an appeal, because in answering an allegation in plaintiff's complaint "[t]hat the proceeding at which the alleged grounds were adduced was conducted without notice to plaintiff of the charges made, and without opportunity for plaintiff to be heard or to prepare any defense . . ." the district in its answer alleged that on June 16 defendant set a hearing at the request of plaintiff and others, who had requested that a hearing on said charges be held immediately; that the hearing was held on June 17, 1959, at the regular meeting place of the commission, at which time plaintiff was present pursuant to notice prior given, and at which time testimony was taken by defendant concerning the charges against plaintiff and others; and that subsequent to the receipt of the testimony as above set forth at said hearing, defendant commission acted by resolution, terminating the services of plaintiff and others.[2]

---

[1]Plaintiff contends that no testimony was taken at this meeting, but that he and others spoke relative to the dismissals of plaintiff and the other firemen.

[2]The court found that this hearing was held and that the commissioners there investigated the charges filed against plaintiff and took testimony from others including the chief and assistant chief of the district. The board's minutes support this finding.

Obviously, the hearing of June 17 is not the type of hearing contemplated to be held under section 1, article XII, on appeal "following disciplinary action." Until the commission acts there is nothing from which to appeal. The fire chief notified plaintiff that he was suspended, pending the meeting of the board, and that at that meeting the chief would recommend dismissal. The suspension was, therefore, temporary until the board acted upon it, plaintiff appearing at the hearing at which the board determined that plaintiff should be dismissed. The order of dismissal was the "disciplinary action" contemplated by article XII as the one from which an appeal could be taken. Neither the fact of the June 17 meeting, nor anything that occurred there, excused plaintiff from taking an appeal from the act of the commission in dismissing him. His failure to do so constituted a failure to exhaust his administrative remedies. ▮ A litigant must exhaust his administrative remedies before resorting to the courts. ▮ Such exhaustion of remedies is a condition of jurisdiction. (*United States* v. *Superior Court* (1941) 19 Cal.2d 189 [120 P.2d 26]; *Dunham* v. *City of Westminster* (1962) 202 Cal.App.2d 245, 249 [20 Cal. Rptr. 772].) ▮ Plaintiff, citing *Hesperia Land Development Co.* v. *Superior Court* (1960) 184 Cal.App.2d 865, 876 [7 Cal.Rptr. 815], where there appears the following language, "Exhaustion of the administrative remedy is a jurisdictional prerequisite to resort to the courts. One exception to this general rule is where irreparable injury will result if an administrative hearing is permitted to proceed and its orders made effective without prior judicial interference," contends that the instant case is one for the application of that exception. However, that exception, as is shown in *Abelleira* v. *District Court of Appeal* (1941) 17 Cal.2d 280, 296 [109 P.2d 942, 132 A.L.R. 715], applies only to cases "dealing with rate orders of regulatory commissions, where the administrative body imposes a confiscatory rate on a public utility." In such cases the right to equitable relief is for the purpose of protecting "the property rights of a petitioner from irreparable injury immediately threatened by a void administrative act." (Pp. 296-297.) As said concerning the situation in that case, the rule "has no relevancy here." (P. 297.) Plaintiff's failure to appeal places him in no different position than if, for example, he had let the statute of limitations run on any claim that he might have had.

In *Alexander* v. *State Personnel Board* (1943) 22 Cal.2d 198

[137 P.2d 433], the petitioners sought by writ of mandate to compel the State Personnel Board and the State Land Commission to restore them to certain positions from which they claimed they were wrongfully discharged. In holding that they were not entitled to relief because they had failed to apply for a rehearing within the time prescribed by the state Civil Service Act, the court said (pp. 199-200) : "The rule that administrative remedies must be exhausted before redress may be had in the courts is established in this state. (*Abelleira* v. *District Court of Appeal*, 17 Cal.2d 280 [109 P. 2d 942, 132 A.L.R. 715], and cases cited at pages 292, 293, 302.) The provision for a rehearing is unquestionably such a remedy. As to the general rule, it is stated in *Vandalia Railroad Co.* v. *Public Service Commission of Indiana*, 242 U.S. 255 [37 S.Ct. 93, 61 L.Ed. 276], at page 261, that one aggrieved by the rulings of an administrative board may not complain that he has been deprived of constitutional rights if he has not availed himself of the remedies prescribed for a rectification of such rulings."

In *Reardon* v. *City of Daly City* (1945) 71 Cal.App.2d 759 [163 P.2d 462], the city council removed the chief of police for misconduct. He failed to follow the rules prescribed by ordinance for obtaining a review of the council's action. He sought by mandamus to compel the council to restore him to his former position. In denying him relief the court held that due process would not require a hearing to be given him unless he had complied with the rules. The court pointed out (p. 766) that the petitioner held no constitutional right to the position of chief of police (nor does the plaintiff here hold such right to the position of fire captain) and that his failure to follow the provisions of the controlling ordinance was a failure to exhaust his administrative remedies, which many decisions of this state hold must be done before the judicial assistance of the courts is available.

 Plaintiff's contention in the case at bench that he is excused from filing an appeal because of his belief that had he appealed the board would not have given him a hearing, is well answered in the *Alexander* case, *supra* (22 Cal.2d at p. 200) : "Adherence to the rule is not excused in this case because of the bare probability, asserted long after the time had expired, that timely application for rehearing would have been denied. As suggested in *Red River Broadcasting Co.* v. *Federal Communications Com.*, 98 F.2d 282, the petitioners cannot be heard to urge that there was danger of re-

fusal of their application when they did not make the effort within the time prescribed.''

In its findings the court stated that by not filing an appeal ''he waived his right to a hearing or appeal before the legally constituted Governing Board of defendant District.'' Whether or not the word ''waived'' is correct in this sentence is immaterial. By his failure to appeal to the administrative board he lost his right to appeal to the courts.

As before shown, the granting of a hearing by the board before adoption by it of disciplinary action in nowise constituted a waiver by the board of the requirement that before appealing to the courts for relief, plaintiff must first exhaust his administrative remedies.

2. *Defendant Did Not Waive Appeal Requirement.*

Plaintiff was discharged at the meeting of the board on June 17. Under the rules he had 10 days to file a written appeal. At the end of that time the action of the board became final. The board was then free to appoint a successor to his position. It is contended that because the board on August 10 considered plaintiff's discharge and sustained its action by a vote, the board thereby waived plaintiff's failure to appeal. However, the board at that time had lost all jurisdiction of the matter and could not waive the requirement of appeal.[3]

Applicable here is *Hoertkorn* v. *Sullivan* (1944) 67 Cal. App.2d 151 [153 P.2d 367]. There the plaintiffs were former members of the San Francisco Police Department who had been removed by the police commission after trial on charges of misconduct. Seven years later they petitioned the police commission to review the case and reinstate them. The commission determined that it had no jurisdiction to do so. In upholding the commission, the court stated that the case was controlled by the decision in *Heap* v. *City of Los Angeles* (1936) 6 Cal.2d 405 [57 P.2d 1323], in which the Supreme Court held that the Civil Service Commission of Los Angeles could not vacate its order discharging the petitioner from his

---

[3]The minutes of the meeting of August 10 disclose that during the regular business meeting of the board, the president ''opened the meeting to hear those in the audience who wished to be heard in the matter of the dismissal of'' plaintiff and the other two men. Plaintiff asked the chairman of the board to tell him why he was discharged and then addressed the audience. Several persons in the audience addressed the board to the effect that it had no right to discharge the men. Obviously, this was not the hearing of any appeal by plaintiff, sought orally or otherwise.

position in the municipal civil service, and restore him to that position. The court in *Hoertkorn* said (p. 153): "In holding that this could not be done without express authority in the municipal charter the Supreme Court said: (p. 407 [of 6 Cal.2d])

"'The jurisdiction of the commission is a special and limited one. (*Petersen* v. *Civil Service Board*, 67 Cal.App. 70 [227 P. 238].) The required procedure was followed, and the question of appellant's discharge was determined by the commission when it adopted the first resolution. Its action sustaining his discharge was "final and conclusive." (*Krohn* v. *Board of Water & Power Commissioners*, 95 Cal.App. 289, 296 [272 P. 757].) It had no jurisdiction to retry the question and make a different finding at a later time. The charter gives no such grant of power, and it may not be implied. "A civil service commission has no inherent power after entering a final order dismissing an officer from the service to entertain a motion for new trial or rehearing and review and set aside its prior order." (43 C.J. 682. See, also, *Cook* v. *Civil Service Com.*, 160 Cal. 598, 600 [117 P. 662].)'"

The same rule was followed in *Proud* v. *McGregor* (1937) 9 Cal.2d 178 [70 P.2d 194], and *Cook* v. *Civil Service Com.* (1911) 160 Cal. 589 [117 P. 662].

In *Hcap, supra*, the court said (6 Cal.2d at pp. 407-408): "But the rule stated above, that a civil service commission has no such power in the absence of express authorization, is sound and practical. If the power were admitted, what procedure would govern its exercise? Within what time would it have to be exercised; how many times could it be exercised? Could a subsequent commission reopen and reconsider an order of a prior commission? And if the commission could reconsider an order sustaining a discharge, could it reconsider an order having the opposite effect, thus retroactively holding a person unfit for his position? These and many other possible questions which might be raised demonstrate how unsafe and impractical would be the view that a commission might upset its final orders at its pleasure, without limitations of time, or methods of procedure."

No procedure is provided for reconsidering discharges by the board other than upon an appeal obtained pursuant to the commission's rules.

As the board had lost jurisdiction to grant plaintiff an appeal, it, likewise, had no power to waive plaintiff's failure to

appeal. "Only an existing right may be waived." (*Loughan*
v. *Harger-Haldeman* (1960) 184 Cal.App.2d 495, 502 [7 Cal.
Rptr. 581].) "There can be no waiver as to a right that has
been lost." (*Bourdieu* v. *Baker* (1935) 6 Cal.App.2d 150, 161
[44 P.2d 587].)

The trial court in the instant case found that defendant
did not waive its right to assert plaintiff's failure to exhaust
his remedies and that no action of defendant misled plaintiff
or prevented him from appealing within the prescribed pe-
riod. This finding is amply supported by the evidence.

3. *Complaint Did Not State a Cause of Action in Contract.*
▇▇▇▇ Plaintiff contends that the court erred in not provid-
ing for a jury trial of all issues. Section 592, Code of Civil
Procedure, provides for jury trials. It further provides that
where there are issues both of law and fact, the issue of law
must be disposed of first. As there was no conflict in the
evidence as to all matters dealing with the issue of exhaus-
tion of remedies, that issue became a question of law for the
court and not one for a jury.

The record discloses a rather unusual situation in this
case. The complaint is entitled "Complaint for Damages
for Breach of Contract" and its allegations purport to al-
lege an oral contract of employment of plaintiff by the dis-
trict, breached by plaintiff's discharge. The prayer is for
damages in the sum of $123,676 (and for other and further
relief). An examination of the pretrial statements of both
parties and the pretrial conference order clearly shows that
up to the time of trial the issues to be considered were those
arising in an action for breach of contract of employment,
namely, whether the district was entitled to discharge plain-
tiff, and if not, what damages, if any, he had sustained.

On the day set for trial of the action, the court read the
pretrial order into the record and then stated, in effect, that
although the pretrial order had set the case for jury trial, it
appeared to have been the position of the pretrial judge and
the parties that the question of plaintiff's right to a jury
trial was now to be decided. Counsel agreed that this was so.
Plaintiff then stated, "[O]ur fundamental complaint, as is
shown in our complaint, is that this is a breach of contract."
Defendant took the position that this was a special proceed-
ing in which no jury could be required; that the court was
acting merely to review the decision of a local agency as to
matters of law. The court held that its duty was to re-

view the board's decision as to matters of law and that as to matters of fact its sole duty was to determine if there was any substantial evidence to support the decision, and denied plaintiff's right to a jury. Thereupon the trial proceeded, starting with the stipulation of the parties as to certain facts, one of them being that no written appeal from the board's action was made by plaintiff pursuant to article XII, sections 1 and 2 of the district's regulations (hereinbefore set forth). Records of the district were introduced into evidence; testimony was adduced from plaintiff, his former attorney Phillips, and two members and the secretary of the board. Thus, as found by the court, defendant at the beginning of the trial set up its contention that the proceeding was barred by plaintiff's failure to exhaust his administrative remedies.

Although the court's findings stated, "[T]his is an action by plaintiff for damages claimed to be due plaintiff because of the alleged unlawful discharge of plaintiff . . ." and although defendant's demurrer to the complaint as not stating a cause of action for breach of contract had been overruled, it is clear that the court considered the matter as a special proceeding to review the board's action pursuant to section 1094.5, Code of Civil Procedure, and not as an action for breach of contract. In such case, of course, no jury is required. Although evidence of the acts of the parties was before the court, it based its judgment solely upon its conclusion that plaintiff had failed to exhaust his administrative remedies, in not filing the written appeal provided by the board's rules.

As will hereafter appear, plaintiff had no cause of action for breach of contract. The demurrer to the complaint should have been sustained. Had the court not considered this as a proceeding under section 1094.5, there should have been no trial. Because of this peculiar change of proceeding from that set forth in the complaint, the necessity of pleading by defendant of plaintiff's failure to exhaust his remedies did not arise.

Plaintiff's complaint is based on the theory that the district had entered into an oral agreement with him "continuing . . . until termination of services by resignation or removal under such conditions as removal might lawfully be effected. . . ." The complaint further alleged that the contract was breached on account of unlawful discharge to plaintiff's

damage of $123,676. Defendant requests this court, as an alternative ground upon which to affirm the trial court's judgment, to review and reverse the order overruling the demurrer. However, in view of the fact that at the trial, defendant urged the court to consider this proceeding as one in mandate under section 1094.5 and the court did so treat it, defendant waived its right to complain of the failure of the court to sustain the demurrer to the complaint. But, as plaintiff contends that the court erred in not treating his proceeding as an action for breach of contract, it becomes necessary for us to determine whether the complaint does state such a cause of action. If, as a matter of law, there was no contract between the parties, then no cause of action for breach could lie.

While the complaint alleged the existence of an oral contract of employment, it also alleged that plaintiff was *appointed* to his position. The pretrial order and the findings of fact state that plaintiff was *appointed* to his position. The term ''appointed'' as used in this context means the *selection* of a public officer.　　　　 See *Main* v. *Claremont Unified School Dist.* (1958) 161 Cal.App.2d 189, 195 [326 P.2d 573]. ''Existence of a contract of employment is essentially inconsistent with the status of public officer.'' (P. 198.) This statement came in the context of the court's demonstrating that teachers are not public officers. See also *Lipman* v. *Brisbane Elementary School Dist.* (1961) 55 Cal.2d 224, 230 [11 Cal.Rptr. 97, 359 P.2d 465], cited by plaintiff, but not supporting his position as it deals with teachers. Police officers are public officers. (*Logan* v. *Shields* (1923) 190 Cal. 661 [214 P. 45].) It follows that firemen are also, as they, like policemen, have been delegated a public duty, the performance of which is a part of the governmental function of the political unit for which they are acting as agents.

However, there appears to be a division of authority on the question, stemming apparently from the differences in the city charters which were under review in the cases. See *Mason* v. *City of Los Angeles* (1933) 130 Cal.App. 224 [20 P.2d 84], holding that a fireman was not a public officer under the Los Angeles charter, and *Jackson* v. *Wilde* (1921) 52 Cal.App. 259, [198 P. 822], holding that under the San Diego charter a fireman was a public officer and not an ''employee'' in the sense that he is in service under a contract of hire. (P. 263.)

Resolution 71789 of the Board of Supervisors of Alameda County, entitled ''Procedure Governing Operation and Man-

agement of each County Fire Protection District in the County of Alameda of which the Board of Supervisors is the Governing Body'' and expressly including defendant district, is explicit in contemplating that certain members of the fire department shall be officers of the district. The regulations of the fire department also distinguish between those members of the fire department who are officers an dthose who are not.

Plaintiff was not an ordinary fireman but a captain. As such he was in a command position, responsible for the discipline of other members of the department and for the maintenance of equipment. The regulations so state. As captain he was clearly an officer of the district.

*Coyne* v. *Rennie* (1893) 97 Cal. 590, 593 [32 P. 578], states, referring to a chief of police: ''It is well settled that the mere appointment or election of a municipal officer for a specified time and salary creates no contractual relation, if such officer is at liberty to resign whenever he may elect to do so. 'Neither acts of the legislature nor ordinances of city councils or boards naming terms and salaries are in the nature of contracts with officers. Although the term and salary may be named in the charter, yet there is no contract for a stipulated time or price that is binding on the public.' (*Love* v. *Jersey City,* 40 N.J.L. 458; Dillon on Municipal Corporations, secs. 231, 265.)''

The following language is also pertinent. ''The possession of an office, or the enjoyment of employment with the government, or under any of its agencies, does not confer a vested property right of any quality whatsoever. The more ancient offices to which the common law attached the property character of incorporeal hereditament find no legal counterpart under the political systems of government in this country.'' (*Boyd* v. *Pendegast* (1922) 57 Cal.App. 504, 506-507 [207 P. 713] (referring to the discharge of a policeman); see also *Cornell* v. *Harris* (1936) 15 Cal.App. 144 [59 P.2d 570].)

It moreover appears, whatever the nature of plaintiff's relation to his job, that he can have no vested contractual right in the terms of his employment; the proper statutory authority may change them at any time. (*Butterworth* v. *Boyd* (1938) 12 Cal.2d 140, 150 [82 P.2d 434, 236 A.L.R. 838]; *Risley* v. *Board of Civil Service Comrs.* (1943) 60 Cal. App.2d 32 [140 P.2d 167]; see also *Payne* v. *State Personnel Board* (1958) 162 Cal.App.2d 679 [328 P.2d 849].)

In *Risley, supra,* it was said: "Plaintiffs' . . . contentions
. . . involve the same fallacious concept, which is, that plaintiffs have a vested, contractual, right to have the terms of their employment continue unaffected by charter amendments. That they have rights, by virtue of the provisions of the charter, which the courts will protect against unauthorized infringements by the city or any of its legislative or executive officers or boards, is undoubtedly true. . . . But that these rights are vested, contractual rights, protected by the state and federal constitutional provisions forbidding the impairment of contracts and the taking of 'property' without due process, so that they cannot be changed, is not true. . . . The rights to which plaintiffs would cling are created by or under the provisions of the charter and are dependent upon those provisions. They may all be lost by the repeal of the provisions or modified by an amendment to the provisions, at the will of those who determine what the charter's terms shall be." (60 Cal.App.2d at p. 37.)[4] Thus in the instant case the rights which plaintiff asserts could be completely lost by repeal of the resolution he relies on. If he would be without contractual rights in that event, it is inconsistent to say he had any contractual right not to have these rights infringed in a less substantial manner. As plaintiff had no contractual rights it then follows that an action for breach of contract does not lie.

The judgment is affirmed.

Sullivan, J., and Molinari, J., concurred.

A petition for a rehearing was denied April 4, 1963.

---

[4]*Risley, supra,* further stated that although the "positions" of the civil service employees of the Bureau of Power and Light of the Los Angeles Department of Water and Power did not rise to the dignity of "offices" because "not 'clothed with a part of the sovereignty of the state' " they did "partake of the other attributes of 'office,' and lack those arising out of contract." (60 Cal.App.2d at p. 36.) So in the instant case, if the position of fire captain could not be considered as that of an "officer," it, at least, has so many of the attributes of officership that it completely lacks those arising out of contract.