OFFICE OF THE ATTORNEY GENERAL
State of California

JOHN K. VAN DE KAMP
Attorney General

----------------------------------

|  |  |
|---|---|
| OPINION | : |
| | : No. 88-892 |
| of | : |
| | : JANUARY 13, 1989 |
| JOHN K. VAN DE KAMP | : |
| Attorney General | : |
| | : |
| ANTHONY S. DaVIGO | : |
| Deputy Attorney General | : |
| | : |

-----------------------------------------------------------------


CRISTINA BUSTOS-THOMAS and HOWARD J. KLEIN, relators herein, filed their Application for Leave to Sue in Quo Warranto on August 10, 1988. On September 9, 1988, proposed defendant Cameron Cosgrove filed his Memorandum of Points and Authorities in Opposition to the Application for Leave to Sue in Quo Warranto. On September 28, 1988, relators filed their Reply to Memorandum of Points and Authorities in Opposition to the Application for Leave to Sue in Quo Warranto.

It is concluded that leave to sue should be granted.

RECITATIONS

On June 7, 1988, the City of Irvine, County of Orange, conducted a general municipal election to fill two vacancies on the city council, to select a new mayor, and to determine the adoption of an amendment to the city charter (hereafter "measure D").

Candidates Paula Werner and Sally Anne Miller were elected to fill the council vacancies. Cameron Cosgrove, proposed defendant herein, received the next highest number of votes.

Councilman Larry Agran was elected mayor, leaving a vacancy on the city council. At that time, section 400 of article IV of the city charter provided in part as follows:

"In the event a Council member is elected to the office of Mayor, the office of Council member shall become vacant upon the council member's qualification for the office of Mayor. The vacancy in the office of Council member shall be filled by the person receiving the next highest number of votes to those elected to the office of Council member at the same municipal election."

Measure D was adopted, adding the following to that part of section 400 quoted above:

". . . unless a petition containing verified signatures of not less than seven (7%) percent of the voters of the City according to the County Clerk's last official report of registration to the Secretary of State, is filed with the City Clerk on or before July 15th following the election creating the vacancy, which petition requests that said vacancy may be filled only by an election, in which event the vacancy may be filled only by an election which shall be called by the City Council at the General Election to be held in November of that year.

"The City Clerk shall have ten (10) working days to certify the petition. In the event the City Clerk determines the petition is not sufficient, the person receiving the next highest number of votes to those elected to the office of Council member at the same municipal election shall be administered the oath of office.

"No signatures obtained prior to the election which created the vacancy shall be counted for the purpose of determining the sufficiency of the petition."

Measure D further provided that "This Charter Amendment becomes effective with the General Municipal Election of June, 1988."

On June 21, 1988, the County Registrar of Voters certified the election results to the city.

On July 5, 1988, a petition, pursuant to measure D, containing signatures of registered voters was submitted to the City Clerk.

On July 12, 1988, the City Council certified the election results. On July 13, 1988, the City Council certified measure D to the Secretary of State.

On July 13, 1988, Agran took the oath of office for Mayor.

On July 14, 1988, the County Registrar of Voters verified the number of signatures on the petition to exceed seven percent of the city voters.

On July 15, 1988, the Secretary of State filed measure D as Charter Chapter number 12, Statutes of 1988.

On July 20, 1988, Agran entered upon the office of Mayor.  On the same date, Cosgrove was sworn to fill the remainder of Agran's term, expiring in 1990, as a member of the City Council.

## RELATORS' CONTENTIONS

Relators contend essentially that measure D applies by its terms retroactively to the date of election.  In this regard, section 2 of the Amendment provides that "This Charter Amendment becomes effective with the General Municipal Election of June, 1988."

It is contended in any event that measure D became effective on July 15, 1988, when accepted and filed by the Secretary of State, pursuant to Government Code section 34463, to wit:

"If the electors vote in favor of the charter proposal, revision, amendment, or repeal, it shall be deemed to be ratified, but shall not take effect until accepted and filed by the Secretary of State pursuant to the provisions of Section 34464."

As such, the Amendment applied prospectively to preclude proposed  defendant Cosgrove from entering upon the office on July 20, 1988, and to require that office be filled by election in November 1988.

## PROPOSED DEFENDANT'S CONTENTIONS

Proposed defendant contends essentially that measure D was not intended to apply to the June 1988 election.

It is contended in any event that measure D could not be constitutionally applied to impair his right to hold office which he acquired at the time of election.

## SUBSTANTIAL QUESTION OF LAW

The principal inquiry may be summarized as follows:

May a charter amendment which by its terms "becomes effective with the General Municipal Election of June, 1988," and which was adopted at that election, and which was accepted and filed by the Secretary of State on July 15, 1988, operate to preclude a person otherwise eligible for public office in accordance with preexisting law from qualifying and entering upon the office on July 20, 1988?

The provisions of Government Code section 34463, supra, are unequivocal.  By the terms of that section, measure D became effective on July 15, 1988.  The measure expressly provides that it "becomes effective" with the June 1988 election.  An initial issue arises as to

whether, under these circumstances, the amendment operated to foreclose at any time after July 15 the assumption of office contrary to its terms.

No substantial question of fact is presented. It is suggested, on the other hand, that the amendment so interpreted is constitutionally deficient. As discussed below, we are not persuaded as to the assertion of any constitutional impediment.

The nature of the right to hold public office in this state was considered in Helena Rubenstein Internat. v. Younger (1977) 71 Cal.App.3d 406, 418:

"In California, the right to hold public office has long been recognized as a valuable right of citizenship. In 1869, in People v. Washington, 36 Cal. 658, 662, our Supreme Court declared that '[t]he elective franchise and the right to hold public offices constitute the principal political rights of citizens of the several States.' In Carter v. Com. On Qualifications etc., 14 Cal.2d 179, 182, the court pointed out: '[T]he right to hold public office, either by election or appointment, is one of the valuable rights of citizenship . . . the exercise of this right should not be declared prohibited or curtailed except by plain provisions of law. Ambiguities are to be resolved in favor of eligibility to office. . . .' (Italics added.) More recently, the high court, citing Carter, has termed the right to hold public office a 'fundamental right.' (Zeilenga v. Nelson, 4 Cal.3d 716, 720; Fort v. Civil Service Commission, 61 Cal.2d 331, 335.) Thus, any ambiguity in a constitutional provision calling for forfeiture of an existing office and disqualification from holding public office should be resolved in favor of continued eligibility."

(See 67 Ops.Cal.Atty.Gen. 81, 84 (1984).)

It is further established that property interests, including permanent public employment, are protected by procedural due process. In 64 Ops.Cal.Atty.Gen. 526, 530 (1981), we stated:

"Section 1 of the Fourteenth Amendment to the Constitution of the United States, and subsection (a) of section 7 of article I of the California Constitution provide that a person may not be deprived of life, liberty, or property without due process of law. The task is to apply the appropriate federal standard and the appropriate California standard of procedural due process in the public employment related context. It is, of course, beyond the realm of dispute that property interests protected by procedural due process extend beyond ownership of tangibles and include certain specific benefits, one of which is permanent public employment. (Arnett v. Kennedy (1974) 416 U.S. 134; Skelly v. State Personnel Board (1975) 15 Cal.3d 194, 206.)"

For example, the incumbent of an office does have a property right in the salary and emoluments of the office while he actually discharges its duties. (Olson v. Cory (1980) 27 Cal.3d 532, 539; Betts v. Board of Administration (1978) 21 Cal.3d 859, 863; 67 Ops.Cal.Atty.Gen. 510, 512 (1984).)

It is equally clear, on the other hand, that there must be a legitimate claim of entitlement to the benefit in question, and not merely an abstract need or unilateral expectation of it. (Board of Regents v. Roth (1972) 408 U.S. 564; Skelly v. State Personnel Board (1975) 15 Cal.3d 194, 206.) As stated in Roth, at 576, and Skelly, at 206, "[t]he Fourteenth Amendment's procedural protection of property is a safeguard of the security of interests that a person has already acquired in specific benefits." (Emphasis added; see 64 Ops.Cal.Atty.Gen., supra, 530-531.) The issue, then, is whether defendant Cosgrove, having received the third highest number of votes, has, even under the preexisting charter, a security of interest which he had already acquired in the public office prior to the effective date of the amendment.

In 64 Ops.Cal.Atty.Gen., supra, at 530, we further stated:

"Property interests are created and their dimensions are defined by existing rules or understandings that stem from an independent source, including state statutes and regulations. (Board of Regents v. Roth, supra, 408 U.S. at pp. 569-570; Perry v. Sindermann, supra, 408 U.S. at pp. 599, 601; Skelly v. State Personnel Board, supra, 15 Cal.3d at p. 207.) Whether a property interest is created expressly by statute or ordinance, or by the rule of an administrative agency implementing a statutory delegation of authority and having the force of law (Zumwalt v. Trustees of Cal. State Colleges (1973) 33 Cal.App.3d 665, 675), or by implied contract, the sufficiency of the claim of entitlement, i.e., whether there is an enforceable expectation of remaining on the list, must be decided by reference to state law. (Bishop v. Wood (1976) 426 U.S. 341, 344-345.)"

Under state law, did Cosgrove have any vested right or interest at the time of election in the office which he now claims? Indeed, was that office a subject of the election, inasmuch as Agran had neither been elected to nor qualified for the office of Mayor? It may be argued that Cosgrove was a candidate for one of the two vacancies which then existed, and not for a third vacancy which was at the time of election, and thereafter until Agran qualified for the office of Mayor, a mere contingency.

In this regard, the first sentence of section 400 of article IV of the city charter provided that "In the event a council member is elected to the office of Mayor, the office of council member shall become vacant upon the council member's qualification for the office of Mayor." (Emphasis added.) Qualification for public office consists of furnishing sufficient bond, if any be required (Gov. Code, § 1461), and taking and filing an oath (Cal. Const., art. XX, § 3; Gov. Code, § 1360). (Gov. Code, § 1777.) Thereupon, the officer "shall enter upon the discharge" of duty. (Elec. Code, §§ 23109, 23111.)

Measure D took effect on July 15, 1988, the date of its acceptance and filing by the Secretary of State. (Gov. Code, § 34463, supra.) Assuming that Agran fully qualified upon his oath as Mayor on July 13, 1988, then a vacancy thereupon occurred on the City Council for which Cosgrove could have qualified. However, it is not disputed that Cosgrove was not sworn until July 20, 1988, after the effective date of measure D.

Under these circumstances, did Cosgrove have an "already acquired" security of interest in the office on the 13th, as to which measure D would operate, if at all, retroactively, or did such an interest vest only upon his qualification and entrance upon the office on the 20th, as to which measure D operated prospectively? We are unaware of any basis for the contention that any interest in a public office might vest in an individual prior to its occupancy. Indeed, while a property interest may inhere in permanent public employment, and in the salary and emoluments of a public office, as previously discussed, a public office is held subject to a change in state law enacted pursuant to an exercise of the sovereign power. As to such a change, there appears no constitutional impediment.

It is long established that public employment is controlled by statute or ordinance rather than by ordinary contract, and therefore is not protected by the contract clauses of the state (art. I, § 9) and federal (art. I, § 10) constitutions. (Olson v. Cory, supra, 27 Cal.3d at 537-538; Markman v. County of Los Angeles (1973) 35 Cal.App.3d 132, 134-135; Payne v. State Personnel Board (1958) 162 Cal.App.2d 679, 682; Martello v. Superior Court (1927) 202 Cal. 400, 408; 65 Ops.Cal.Atty.Gen. 475, 480-481 (1982).)

It has also been held that no one has a vested right in public employment except insofar as the right is conferred by statute or other valid regulation. (Butterworth v. Boyd (1938) 12 Cal.2d 140, 150; 67 Ops.Cal.Atty.Gen., supra, 511.) While the right of a public officer to hold an office to which he is entitled is subject to the full protection of the law (In the Matter of Carter (1903) 141 Cal. 316, 319; Cline v. Superior Court (1920) 184 Cal. 331, 336), the possession of an office does not confer a vested property right of any quality whatsoever (Litzius v. Whitmore (1970) 4 Cal.App.3d 244, 248; In the Matter of Carter, supra; Deupree v. Payne (1925) 197 Cal. 529, 538; McKannay v. Horton (1907) 151 Cal. 711, 719). Such an officer takes and holds the office subject to the conditions that may be imposed upon it by the laws of the state whose servant he is. (Cline v. Superior Court, supra.)

Consequently, we are not persuaded that the asserted right to public office is supported by the constitutional prohibitions against the impairment of contracts or the deprivation of property without due process. In Risley v. Board of Civ. Serv. Commrs. (1943) 60 Cal.App.2d 32, 37, the court observed:

"Plaintiffs' first two contentions may be considered together, as they involve the same fallacious concept, which is, that plaintiffs have a vested, contractual right to have the terms of their employment continue unaffected by charter amendments. That they have rights, by virtue of the provisions of the charter, which the courts will protect against unauthorized infringement by the city or any of its legislative or

executive officers or boards, is undoubtedly true, and is recognized in the large number of cases cited by the plaintiffs.  But that these rights are vested, contractual, rights, protected by the state and federal constitutional provision forbidding the impairment of contracts and the taking of 'property' without due process, so that they cannot be changed, is not true. . . ."

Cosgrove had not qualified and entered upon the office in question when measure D, which by its express terms applies to the June 1988 election, became effective on July 15.  Hence, immediate issues arise as to whether Cosgrove had an already acquired interest in the office which could have been affected by subsequent legislation, and whether any such interest is, in any event, constitutionally protected.  Hence, the proposed challenge to Cosgrove's claim of entitlement to hold and exercise that public office is based on substantial grounds.

## THE PUBLIC INTEREST

The right to hold public office is fundamental.  The right of the electorate to determine how their public officers shall be chosen is fundamental.  A resolution of the dispute between these interests is in the public interest.  The application for leave to sue in quo warranto should be granted.

* * * * *