206 A.2d 456.

RICHARD DUFAULT *vs.* ERNEST HEBERT *et al.*

JANUARY 22, 1965.

PRESENT: Condon, C. J., Roberts, Paolino, Powers and Joslin, JJ.

182

CONDON, C. J. This is a petition for certiorari to review the action of the personnel board of the city of Woonsocket sustaining an order of dismissal of the petitioner from the position of night watchman in the highway division of the department of public works. Such action was taken by the board after a public hearing at which the parties were fully heard. We issued the writ and in compliance therewith the board has made due return of its records in the proceeding.

It appears from the return that petitioner was dismissed because he refused to obey an order of his superior, the superintendent of the highway division, to pick up a dead dog on South Main street at about 2:45 a.m., July 31, 1960. Upon his refusal the superintendent asked him if he knew the penalty he would thereby incur. The petitioner replied that he did not care and that picking up dead dogs was not one of the duties of his job as night watchman in the highway division. As a result of petitioner's refusal it was necessary to call a laborer in the division not on duty at that time to go to South Main street to remove the dog. Thereafter, on August 4, the director of public works relieved petitioner of his duties and by letter of August 5 notified the personnel director that in accordance with chapter 1237 of the ordinances he was dismissing petitioner from the classified service of the city effective August 6, 1960.

Upon receiving such letter the personnel director made inquiries of the superintendent of the highways and petitioner to determine whether the circumstances surrounding petitioner's dismissal were as represented by the director of public works and whether the order of dismissal was warranted thereby. Based on the information he thus obtained he reported to the personnel board that "after carefully considering both sides of this issue, I can only recommend * * * that the dismissal be upheld at this time."

Thereupon petitioner appealed to the board which on

August 16, 1960 held a public hearing on the appeal. The evidence adduced there did not differ materially from the information which the personnel director had obtained and upon which he based his recommendation upholding the dismissal order of the director of public works. In fact there was no conflict in the evidence material to the issue raised by the appeal. That petitioner refused to obey the order of his superior was undisputed. The only matter in controversy was whether the order was a valid one within the scope of petitioner's duties as a night watchman which he was bound to obey.

The question thus raised is solely a question of law which may properly be reviewed by certiorari, there being no other remedy available to petitioner by which he could obtain a judicial determination of his legal right under chapter 1237 entitled "On The Administration Of Personnel Policies Based Upon The Home Rule City Charter Of Woonsocket." For this reason point 4 of respondent's brief that certiorari does not lie to weigh the evidence adduced at the public hearing is inapposite in so far as this precise question is concerned and therefore is not deserving of further consideration. In what follows we are concerned solely with the proper construction of the ordinance in order to determine whether the order which petitioner admittedly refused to obey was reasonably within the scope of the duties of his position as night watchman.

After considering the pertinent portions of chapter 1237 having an immediate bearing on the resolution of that question, and keeping in mind the primary purpose of such laws and regulations governing the administration of personnel policies in the classified civil service, we are of the opinion that they must necessarily be construed with some reasonable flexibility if the process of personnel administration is not to be confined in a strait jacket.

However, petitioner contends that in the circumstances here his refusal to obey a single order clearly beyond the

scope of the duties of watchman as set out in chapter 1237 did not warrant an order of dismissal. In any event he further contends that the order was arbitrary, of no benefit to the classified service, and that the punishment inflicted was excessive and unreasonable.

In support of his contention that the order was clearly beyond the scope of his duties as watchman he relies upon the following provisions of chapter 1237:

"Class Title: Watchman

"Characteristics Of The Class: Under general supervision, cares for and protects public property from fire, vandalism, and theft; and does related work as required.

"Examples Of Duties: Makes rounds of buildings to guard against and report prowlers, fire, water leaks or other irregularities; punches watch box station at regular intervals. Checks windows and doors. Turns lights on and off as required. May perform janitorial duties. Puts out road flares and horses on street repair and construction jobs. Tends heating boiler."

In reply to such contention respondents argue that the duties therein enumerated are merely descriptive examples as indicated in the title of the provision and were not intended to be exclusive of other duties in the general employment of the highway division. For this view they rely upon the following provisions of chapter 1237, section IV, paragraph C, which precedes the above-quoted provision cited by petitioner:

"Administration Of Plan: The Class Titles assigned to Positions by their Allocation to the Classes established by the Classification Plan shall be the official Title of such Positions and shall be used in all personnel, accounting, budget, appropriation, and financial records and communications of all City departments and agencies. The Class specifications are to be deemed *descriptive and explanatory, but not necessarily inclusive or exclusive.* Qualifications not mentioned in the specifications, such as citizenship, hon-

esty, sobriety, and industry are to be considered part of the specifications."

The respondents especially rely upon the above-italicized portion.

Standing alone and construed strictly as limiting the range of the duties of watchman principally and primarily for the sole benefit of an incumbent thereof, the provision relied upon by petitioner would furnish sufficient justification for his refusal to obey the order of his superior. But in our opinion the board was not bound to construe the provision so narrowly. On the contrary it was justified in treating the language of that provision as merely an exemplification of some of the more obvious duties of a watchman, but not necessarily exclusionary of other duties which in the effective administration of the division the superintendent of highways might occasionally call upon a watchman to perform.

We think that the language relied upon by respondents is strongly indicative of an intent on the part of the city council that chapter 1237 while safeguarding the rights of employees in the classified civil service should at the same time allow room for superior officers to make reasonable deviations therefrom when occasionally necessary in the public interest. We are confirmed in this conclusion by the generally-accepted view that state and municipal enactments providing for so-called merit systems for civil service employees are primarily intended to promote the more efficient administration of the public service. *Borough of Park Ridge* v. *Salimone*, 21 N. J. 28, 44. In that case the court said: "The welfare of the people as a whole, and not specifically or exclusively the welfare of the civil servant, is the basic policy underlying the law * * * and to effectuate that policy it has long been recognized that the statutes must be liberally construed * * *."

Our own statute, G. L. 1956, chaps. 3 and 4 of title 36, setting up such a system expressly provides in §36-3-2:

"The purpose of this chapter and chapter 4 of this title is to guarantee to all citizens a fair and reasonable opportunity for public service; to establish conditions of service which will attract officers and employees of character and capacity and to increase the efficiency of the governmental departments and agencies by the improvement of methods of personnel administration." We take it whether expressly thus stated therein or not that chapter 1237 was enacted by the Woonsocket city council for like purposes.

In our opinion there can be no question that in the implementation of those purposes the efficient administration of the public services has priority. *Masyk* v. *Parshley*, 94 R. I. 282, 180 A.2d 314. Strict compliance with the letter of the law delineating the scope of an employee's duties such as are involved here must yield to the primary public interest to be served by the highway division.

On this view of the applicable law we cannot say that the board's decision upholding the order of dismissal was arbitrary, illegal and void. Whether the punishment was excessive considering the quantum of the evidence on which the dismissal order was based is not properly before us in the instant proceeding. On certiorari we do not weigh the evidence. *Masyk* v. *Parshley, supra.* To determine that question it would be necessary to do so.

The petition for certiorari is denied and dismissed, the writ heretofore issued is quashed, and the records certified are ordered sent back to the board with our decision endorsed thereon.

*Lewis Z. Lavine,* for petitioner.

*Walter H. Sharkey,* City Solicitor of the City of Woonsocket, for respondents.