METROPOLITAN FIRE FIGHTERS AS-
SOCIATION, LOCAL 763 (AFL–CIO),
et al., Complainants-Appellants,

v.

Beverly BRILEY, Mayor of the Metropoli-
tan Government of Nashville and David-
son County, and Bill Mykitta, Payroll
Supervisor of the Metropolitan Govern-
ment of Nashville and Davidson County,
Defendants-Appellees.

Court of Appeals of Tennessee,
Middle Section.

Aug. 30, 1974.

Certiorari Denied by Supreme Court
March 17, 1975.

Cecil D. Branstetter and Carrol D. Kil-
gore, Nashville, for complainants-appel-
lants.

Robert W. Rutherford and Edward W.
McCabe, Metropolitan Attys., Dept. of Law
of the Metropolitan Government of Nash-
ville and Davidson County, Nashville, for
defendants-appellees.

## OPINION

SHRIVER, Judge.

### THE CASE

This is a declaratory judgment suit which
was instituted and sustained as a class ac-
tion on behalf of all salaried employees of
the Metropolitan Government of Nashville
and Davidson County, Tennessee, which
seeks recovery of a half-month's salary al-
leged to have been withheld from each em-
ployee as a result of an executive order of
the Mayor changing the dates of all pay-
days from a time during each two week pay
period to a date one week after the end of
such pay period.

The case was heard by Chancellor Frank
F. Drowota, III, and resulted in an opinion
and decree holding that the executive order

in question merely accomplished a change in accounting procedures, which order was within the authority of the Mayor and which did not change the substantive rights of the employees, hence, the recovery of alleged salary loss was denied.

From this decree the complainants duly perfected their appeal to this Court and have assigned errors.

## THE PLEADINGS

The Original Bill charges and the record shows that on November 12, 1971, the Payroll Supervisor of the Department of Finance of the Metropolitan Government issued a memorandum to all Metropolitan employees, notifying them that, pursuant to Executive Order No. 42 issued by the Mayor, the semi-monthly dates of payment of salaried employees of the Metropolitan Government would be gradually changed over a 10-month period so that the paydays would be on the 7th and 22nd days of each month, one week after the end of such pay period, rather than on the 12th and 28th of each month, during the pay period, as had been true previously.

It is alleged that the practical result for the current fiscal year ending June 30, 1972, was to reduce the annual salary of all salaried employees by the amount of one bi-monthly payment, or one-twenty-fourth of the annual salary of each employee. It is asserted that, although, technically, this amount would be recovered at the termination of the employee's service, it would amount to a forced loan without interest for an indeterminate number of years.

It is further alleged that the change in paydays amounts to a change in the pay plan in effect prior to November 12, 1971 in a manner other than that prescribed by Article XII, § 12.10 of the Charter of the Metropolitan Government of Nashville and Davidson County.

It is further charged that the change in paydays also violates the specific provisions of Chapter 7, Section 12 of the Civil Service Rules and Regulations of the Metropolitan Government which provides that: "Salaried employees shall be paid on a semi-monthly basis. Such payment received shall be in full for the current pay period."

It is also alleged that the change in paydays constitutes a breach of the contract of employment of all employees affected, which contract impliedly incorporated the annual salary schedule legally provided or in effect at the time of employment.

It is charged that the change in paydays is illegal insofar as it delays any part of the employee's salary earned in 1972 beyond June 30, 1972, because it deprives them of money already duly appropriated by the Metropolitan Council for their payment and makes them dependent upon the possibility of new appropriations in the future for the payment of earned salaries.

Finally, it is averred that all members of the class represented by the complainants are entitled to a declaratory decree establishing the illegality of the change in paydays and to a judgment for the unpaid portions of the salaries of all members of the class.

The defendants answered the bill, admitting certain of the facts alleged as to the effect of the executive order of the Mayor in question.

A motion for summary judgment was filed by the complainants on the ground that there is no substantial dispute as to any material fact affecting the rights of the complainants and the class they represent.

In support of the motion certain affidavits and exhibits were filed, including the Rules of the Civil Service Commission and the official pay plan of the Metropolitan Government.

Subsequently, the defendants filed a motion for summary judgment, together with affidavits and exhibits. In said motion it is agreed that there is no substantial dispute

as to any material facts as alleged in complainants' motion, but they deny that complainants have a right to recover any damages as a matter of law and deny that they have suffered any loss by reason of the change in dates of payment.

After hearing the cause the Chancellor filed a Memorandum Opinion on November 27th, 1973, followed by a decree in which it was recited that the cause came on to be heard before the Honorable Frank F. Drowota, III, Chancellor, on May 11, 1973, as a class action maintained by the named complainants on behalf of all salaried employees of the Metropolitan Government, excluding those employees requesting exclusion from the class by written application, on the pleadings, motion of the defendants to dismiss, motion of the defendants for summary judgment, affidavits and exhibits in support of said motions, together with motion of complainants for summary judgment and affidavits and exhibits in support of same, arguments and briefs of counsel, and the entire record; whereupon, the defendants' motion for summary judgment was sustained and complainants' motion for summary judgment was overruled.

The decree recites that for reasons assigned by the Court in the Memorandum Opinion, which is incorporated by reference, the defendants' motion for summary judgment is sustained and the case dismissed and an appeal to this Court granted.

### ASSIGNMENTS OF ERROR

There are four assignments of error.

Assignment No. 1 charges error in failing to hold that each salaried employee of the Metropolitan Government was deprived of a half-month's salary by the executive order in question.

Assignment No. 2 charges error in holding that the Metropolitan Mayor had authority and power to alter the substantive rights of the employees by changing the days of the month on which the salaried employees should be paid, thus, causing each employee to lose a full half-month's salary.

Assignment No. 3, while in different language, is, in substance, the same as Assignment No. 2.

Assignment No. 4 charges error in failing to hold that the plan of payment put into effect by the executive order constituted a violation of the contractual rights of the employees and was in violation of Article I, Section 10 of the United States Constitution.

### THE CHANCELLOR'S OPINION AND OUR CONCLUSIONS

As was found by the Chancellor in his Memorandum Opinion, the Payroll Supervisor of the Department of Finance of the Metropolitan Government, on November 12, 1971, issued a memorandum to all Metropolitan employees which contained a schedule of payroll date changes to facilitate the transition to new payroll dates set by the Mayor in Executive Order No. 42, and pursuant to said memorandum, the payroll dates were ultimately changed from the 12th and 28th to the 7th and 22nd of each month, so that under the new pay plan, on the 7th day of the month, a salaried employee would receive his pay for the period from the 16th day through the end of the preceding month. On the 22nd, he would receive pay covering the period from the 1st through the 15th of each month. Thus, there would be a lag of one week from the end of the work period to the date of payment.

It is noted that complainants contend that:

(1) The practical result of this action was to reduce the annual salary of the fiscal year ending June 30, 1972 of all members of the class by an amount equal to one bimonthly payment, which constituted a forced loan of that amount to the Metropol-

itan Government by the class members until termination of employment;

(2) The action was in violation of Article XII, § 12.10 of the Charter of the Metropolitan Government, which section outlines the manner in which the pay plan is to be adopted;

(3) The action violates Chapter 7, Section 12 of the Civil Service Rules and Regulations of the Metropolitan Government which provides that: "Salaried employees shall be paid on a semi-monthly basis. Such payment received shall be in full for the current pay period."

(4) The action constitutes a breach of the contract of employment of each member of the class; and,

(5) The action is illegal in that it deprives members of the class of money already duly appropriated for their salaries in 1972.

In dealing with these contentions, the Chancellor found as follows:

"The contention that the action results in a forced loan from 1972 until the termination of employment is without merit. Assuming, without deciding, that the action constitutes a forced loan, the obligation matures at the close of the pay period but is paid in full seven days later. For instance, at the end of a given month, the Metropolitan Government owes its salaried employees one-half-month's pay, which is paid in full on the seventh day of the next month; therefore, there is no obligation owing from the 7th until the 15th day of that month. As regards the argument that this action constitutes a wrongful infringement upon the rights of a civil service employee, case law indicates that the change of a pay day by seven days in and of itself does not constitute an actionable wrong. Although civil service employees have rights which the courts will protect against unlawful infringement, such rights are not vested contractual rights which are protected by constitutional

guarantees from being *changed*. *Risley v. Board of Civil Service Commissioners* [60 Cal.2d 32], 140 P.2d 167, 171 (1943).

Plaintiffs second contention that the action violates Chapter XII, § 12.10 of the Charter is without merit. A reading of this Charter provision does not support plaintiffs' position. Under the provision, the 'pay plan' contemplates a classification of jobs and an 'assignment of each classification to grades equitably related to each other.' The details of payroll procedures, such as time of payment, are not within the scope of Section 12.10. Thus, the procedural requirements of that section do not control alterations such as a change in the date of payment.

Under the principle of the *Risley* case, it is the opinion of this Court that plaintiffs' contentions that the action constitutes a breach of contract or an illegal deprivation of monies are also without merit.

The most difficult question involves plaintiffs' contention that defendants' action is in violation of Chapter 7, Section 12 of the Civil Service Commission Rules and Regulations. Section 12 states:

'Salaried employees shall be paid on a semi-monthly basis. Such payment received shall be in full for the current pay period.'

There can be little dispute that under the plain language of Section 12, the salaried employees are not receiving payment 'in full for the current pay period' when a given payday is seven days following the expiration of the corresponding pay period. Therefore, the determinative issue is whether the defendant Briley, as Chief Executive of the Metropolitan Government, has the authority, express or implied, to take the action in question. *Risley, supra,* at 171.

The general powers and duties of the Mayor of Metropolitan Nashville are outlined in Article 5 of the Charter. Section 5.01 states that:

'The executive and administrative power of the Metropolitan Government shall be vested in and exercised by a Metropolitan County Mayor and such other departments, boards, commissions, officers and agencies as are created or authorized by this Charter.'

Section 5.03 states:

'The Mayor is authorized to administer, supervise and control all departments created by this Charter, except as otherwise specifically provided, and also all departments created by ordinance pursuant thereto. Such administration shall be by and through departmental directors under the supervision and control of the Mayor.'

These quoted provisions vest defendant Briley with authority to control the Department of Finance as established pursuant to Chapter 1, Article 8 of the Charter. Under Section 8.103(b) of the Charter, the Director of Finance under 'supervision and control' of the Mayor shall:

'Maintain accounting systems for the general services district and the urban service district of the Metropolitan Government, and for each department, office and agency thereof, in accordance with generally *recognized governmental accounting principles and procedures* . . .' [Emphasis added.]

Therefore, absent a valid restraint upon the powers of defendant Briley, as the Mayor of Metropolitan Nashville, he is vested with the power to order changes in accounting procedures which do not adversely affect substantial rights of the employees of Metropolitan Nashville. The test to determine validity of such executive action would be a weighing of the utility of the action *vis á vis* the gravity of the resulting harm to those rights are affected.

Chapter 7, Section 12 of the Civil Service Commission Rules and Regulations appears to be the only possible restraint upon defendant Briley's authority to take the action in question. A study of the basic objectives of the regulations in conjunction with the principle that the regulations should not be applied so as to confine the process of personnel administration to a strait jacket, *Default [Dufault] v. Hebert [99 R.I. 181], 206 A.2d 456* (1965) undergirds the position of the defendants herein."

■ It is pointed out that the objective of the Civil Service Rules and Regulations is to promote efficient and equitable procedures for the administration of the metropolitan system and the Chancellor was of the opinion that the new pay dates provide for a more efficient financing system.

■ It is also to be noted that the Charter contains a provision which calls for audits prior to payment of the payroll and this seems to be in conflict with Section 12 of Chapter 7, bearing in mind that payroll obligations are necessarily contingent in amount until the end of a given pay period because an employee may be absent due to sickness or other causes during part of the pay period and, thus, not earn the full amount of his salary for that period. Thus, if the payroll is made up before the end of the period for a large number of employees, it must necessarily follow that in many cases the amount of the checks for salaries for a full pay period would amount to an overpayment where the employee, for any reason, did not perform his work during the entire period.

It, thus, appears that the requirement in the Charter calling for an audit of the payrolls before they are paid presents an impossible situation where the attempted audit is made before the end of the period.

This was one of the impelling reasons for changing the dates of paydays to a time one week after the end of the work period so that an accurate audit could be made before the checks for the payroll were made up.

The Chancellor noted that he was unable to find any case law directly in point with respect to the action of the defendants in this matter but referred to the case of *Douglas v. MacLean, Sup., 155 N.Y.S.2d 547 (1956)*, where a City Commissioner, by executive order, made a minor alteration in a pay plan and the Court upheld this action, stating that he acted within his power because it was reasonably calculated to achieve the objective of a more efficient system. The Court's opinion concluded:

"It is the opinion of this Court that the defendants' action was within their authority and said action is hereby upheld."

It seems appropriate to comment briefly on one or two other matters contained in the record that bear on this question. For example, it is pointed out in the affidavit of A. W. Mykitta, Payroll Supervisor of the Department of Finance, which affidavit was attached to the motion for summary judgment, that the firm of public accountants who conducted the annual audit of the records of the Department of Finance of the Metropolitan Government, along with other firms who had previously audited said accounts, complained about the practice of paying employees prior to the end of a particular pay period. They stated that such practice resulted in payrolls being authorized after only a few days into a period for which work was certified to have been performed. It was pointed out that numerous unearned checks were unavoidably prepared, and, *presumably* cancelled at a later date, thus, involving a constant correction process of completed payroll execution, and that under this plan it was possible for an employee to receive payment for unearned wages.

In his affidavit Mr. Mykitta recommended to the Director of Finance that the date of paydays for salaried employees be gradually changed from the 12th and 28th until there existed a lag of seven days from each payroll period.

His affidavit stated, among other things:

"This plan is necessary both from internal control and to furnish us sufficient time under the Data Processing Method of payroll procedures. This allows certification on the date the payroll period ends and affords sufficient time to process the payrolls and issue pay checks after such certification. This plan assures the correct certification of the payroll and eliminates all guess work."

He further states in said affidavit:

"It is impossible to issue a payroll check for the pay period with correct and proper certification without a seven day lag period."

We are impressed that the position of the appellants that the employees lost two weeks pay because they received only twenty-three pay checks in 1972, presents a somewhat artificial distinction inasmuch as it is shown that the missing paycheck was merely delayed until January 5, 1973. Defendants plausibly argue that each paycheck is simply postponed one week and not to the end of an employee's tenure with Metropolitan Government.

Again, we are impressed that the Metropolitan Charter, Article XII, Section 12.10, hereinabove referred to, does not set forth the details of payroll procedure, including the time of payment, and that the pay plan in effect at the time the paydays were changed nowhere referred to the time of payment; hence, impliedly, leaving the time of payment to be established administratively. Thus, we are unable to agree with the contention of appellants' counsel that the Mayor's action in establishing a time of payment, followed by an appropriate order from the Finance Department, was inconsistent with Section 12.10, supra.

On the whole, we feel compelled to agree with the conclusions of the Chancellor with

respect to this matter; hence, his decree is affirmed.

Affirmed.

TODD, J., and SMITH, Special Judge, concur.