Gregory A. GERGANS, M.D., Plaintiff,

v.

Jessie BROWN, Secretary, Department of Veteran Affairs, Defendant.

No. 94 C 4535.

United States District Court,
N.D. Illinois,
Eastern Division.

Sept. 26, 1995.

Gerald A. Goldman, Arthur R. Ehrlich, Jonathan C. Goldman, Law Offices of Gerald A. Goldman, Chartered, Richard P. Reich-

stein, Law Offices of Richard P. Reichstein, Ayesha Salima Hakeem, Chicago, IL, for plaintiffs.

Jack Donatelli, United States Attorney's Office, Chicago, IL, for defendant.

### MEMORANDUM OPINION AND ORDER

ASPEN, Chief Judge:

Plaintiff Gregory Gergans, M.D., brings this one-count complaint for declaratory judgment against defendant Jessie Brown, Secretary of the Department of Veterans Affairs ("the Department"), alleging that the Department failed to provide him with the proper procedures in appealing his discharge from employment. Presently before this court are the parties' cross-motions for summary judgment.[1] For the reasons set forth below, plaintiff's motion is denied and defendant's motion is granted.

### I. Background

Dr. Gergans, a specialist in nuclear medicine, was employed by the Department for eighteen years as a medical doctor at various VA hospitals. Sometime around January 1993, plaintiff was transferred to the Edward Hines, Jr. Hospital ("Hines") and fell under the supervision of Dr. Mark Boles, Acting Chief of the Nuclear Medicine Service. Apparently, their relationship started off poorly and never improved. Dr. Boles scolded Dr. Gergans for taking excessive amounts of annual and sick leave, failing to be at the hospital during required hours, and failing to satisfy his teaching and research obligations. In response, Dr. Gergans accused Dr. Boles of age and religious discrimination because he refused plaintiff's requests for an altered tour of duty and more leave time, required plaintiff to sign-in every day, and provided plaintiff with inadequate employment conditions. Dr. Gergans aired all of these complaints in a memo to Dr. Boles on April 5, 1993, which ended: "Do you think you are going to remain safe when you send me these potentially career damaging memos in common mail boxes and leave them loose upon desks?" Plaintiff's 12(M) Ex. 24; Defendant's 12(M) Ex. D2.[2] Dr. Boles interpreted this last sentence as a threat, and informed Dr. Gergans that "[f]urther comments, behavior, or actions of this nature can lead to disciplinary action up to and including your removal." Plaintiff's 12(M) Ex. 10; Defendant's 12(M) Ex. D4. Dr. Boles also referred plaintiff to the employee counselling service because of his inappropriate behavior.

Friction between plaintiff and his supervisors did not end with this exchange. In an August 5, 1995 letter, Dr. Gergans requested the Chairman of Nuclear Medicine at Loyola University Medical Center to review a patient's medical records to determine if a misadministration of radioactive treatment had occurred at Hines. The Chairman responded that the treatment given to the patient was proper, and expressed his concern over plaintiff's decision to seek review of this treatment from him, rather than from his direct superiors at Hines. Dr. Gerasim Tikoff, Chief of Staff at Hines, was informed of this incident, and proposed a formal reprimand of Dr. Gergans based on his unapproved request for a peer review and unauthorized disclosure of patient records. Dr. Gergans received notice of this proposal, and a reprimand was issued to him on August 31, 1993 by the Director of Hines.

---

1. Although these motions were to be filed in February 1995, defendant instead filed a motion to dismiss for lack of subject matter jurisdiction which we denied on March 31, 1995. Defendant then filed its cross-motion and responded to plaintiff's motion for summary judgment, but plaintiff ran into difficulties with his lawyer, and subsequently has had several attorneys file appearances on his behalf. His most recently retained counsel filed an appearance on July 28, 1995, and moved for an extension of time in which to file the required memoranda. We granted that motion in part, giving plaintiff until September 5, 1995 to respond to the cross-motion and reply to defendant's response to his motion. Neither of these briefs has been filed. Nonetheless, we believe that the parties' positions are sufficiently defined for us to resolve the motions at this time.

2. Citations to "Plaintiff's 12(M)" or "Defendant's 12(M)" refer to the parties' submissions required by General Rule 12(M) of the United States District Court for the Northern District of Illinois ("Local Rule"). We note that neither party has complied with Local Rule 12(N), which requires each side to respond to the factual assertions contained in the other's 12(M) statement.

Because of these incidents, Dr. Tikoff sent a memo to the Physical Standards Board ("the Board") of the hospital, expressing his concerns about plaintiff's "communications and actions which have become increasingly suspicious, hostile, and impulsive," and asking the Board to evaluate Dr. Gergans's "neuropsychiatric status . . . [and] his ability to continue his present employment." Plaintiff's 12(M) Ex. 8; Defendant's 12(M) Ex. D9. Plaintiff declined to submit to this examination, and sought an independent review of his situation from the Department's Central Office in Washington, D.C. Based on this evasiveness, Dr. Tikoff ordered Dr. Gergans in a September 24, 1993 memo to immediately cooperate with the Board's examination. Plaintiff again refused to submit to the examination, contending that he was awaiting a response from the Central Office in Washington. Because of his refusal to comply with Dr. Tikoff's order, Dr. Gergans was placed on "absent without leave" status and removed from all other assignments.

Despite this disciplinary action plaintiff still refused to cooperate with the Board. On October 8, 1993, he was notified of his proposed suspension because of his noncompliance with the direct orders of Dr. Tikoff. Plaintiff did not respond to the notice of proposed suspension, and on November 2, 1993, he was given a fourteen day suspension. In a letter informing him of the suspension, the Director of Hines stated that because plaintiff's suspension "involve[d] a question of professional conduct or competence, [he] ha[d] the right to appeal this decision to the Disciplinary Appeals Board and to request a formal hearing before the Board." Plaintiff's 12(M) Ex. 3; Defendant's 12(M) Ex. D21. However, on December 10, 1993, the Director amended her notice to indicate that the suspension was actually issued for reasons *not* related to Dr. Gergans's professional conduct or competence, but

rather, for his refusal to follow the direct order of a superior. Therefore, the Director contended, any appeal of the suspension decision could not be presented to the Disciplinary Appeals Board, but needed to be brought under the Department's grievance procedures.[3]

This suspension obviously did not change Dr. Gergans's stance; he continued to refuse the Board's request for an examination and failed to report to the Board as ordered at the end of his suspension, thereby causing him to be classified for a second time as absent without leave. On December 13, 1993, Dr. Tikoff informed plaintiff that the Department was considering discharging him because of his failure to report to the Board as ordered, and because of his absence from the hospital without approved leave.[4] On January 11, 1994, the Director of Hines notified Dr. Gergans that he was discharged from employment effective January 18, 1994, for the two violations of federal regulations cited in the proposed letter of discharge. The Director also informed plaintiff that the discharge was not appealable to the Disciplinary Appeals Board, since it did not involve a question of his professional conduct or competence. Nonetheless, plaintiff immediately notified the Department's Central Office that he wanted to appeal the discharge to the Disciplinary Appeals Board. Although it appears that Dr. Gergans was subsequently given a hearing before the grievance board, he nonetheless filed this action in July 1994 seeking a declaration that the Department violated its own regulations by discharging him without permitting an appeal to the Disciplinary Appeals Board.

## II. Summary Judgment Standard

█ A motion for summary judgment will be granted if "there is no genuine issue of material fact and . . . the moving party is

3. Plaintiff did not accept this characterization of the suspension decision, and sought review of the action before the Disciplinary Appeals Board. However, as plaintiff has not challenged the suspension decision, we decline to address its propriety.

4. The regulations cited by Dr. Tikoff in this notice, 38 C.F.R. § 0.735–20(a) ("Employees are required to be punctual in reporting for duty,

and to stay on the job unless excused"), (b) ("deliberate or wilful resistance toward or refusal to carry out the proper order of a superior"), have since been amended. *See* 58 Fed.Reg. 61811. The parties did not mention this amendment, and plaintiff does not contend that this alteration affected the validity of the Department's actions.

entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). In deciding a motion for summary judgment, the facts must be read in a light most favorable to the non-moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 254, 106 S.Ct. 2505, 2513, 91 L.Ed.2d 202 (1986).

## III. Discussion

Both parties contend that no material issues of fact remain in dispute, but they disagree as to the legal conclusions we should draw from these facts. Plaintiff asserts that the Department failed to follow its own regulations and procedures in denying him review before the Disciplinary Appeals Board. Defendant maintains that its actions were consistent with its regulations and that Dr. Gergans received all the procedures to which he was entitled.

We begin our discussion with the statutory framework at issue.[5] When an authorized official of the Department brings charges against an employee, and these charges lead to adverse personnel action, the employee is entitled to appeal the action to another decisionmaker in the agency. 38 U.S.C. § 7461(a). In the case of a major adverse action, such as suspension or discharge,[6] the employee is entitled to an appeal before the Disciplinary Appeals Board "[i]f the case involves or includes a question of professional conduct or competence." 38 U.S.C. § 7461(b)(1); *see also id.* § 7462 (outlining appeal process before Disciplinary Appeals Board). However, if the major adverse action does not involve or include a question of professional conduct or competence, the employee may not appeal the decision to the Disciplinary Appeals Board, but must appeal through the grievance procedures provided in 38 U.S.C. § 7463 or the employee's collective bargaining agreement. *Id.* § 7461(b)(2). A question of "professional conduct or competence" is one involving direct patient care or clinical competence, *id.* § 7461(c)(3), and the Department's decision as to whether a particular adverse action falls into this category is not appealable to any other body within the agency. *Id.* § 7461(d).

At bottom, plaintiff asks us to review the agency's interpretation of the phrase "professional conduct or competence" as it was applied to his situation. Absent an organic statute to the contrary, we review agency decisions such as this under the standards outlined in the Administrative Procedure Act ("APA"), 5 U.S.C. §§ 500–706. Essentially, the APA limits our review of agency action to only those decisions which are "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A). The starting point for our review of this agency action is the relevant statutes administered by the Department: if they clearly address the precise question at issue, then the agency must adhere to the answer Congress has given. *Inman v. Shalala*, 30 F.3d 840, 843 (7th Cir. 1994) (citing *Chevron U.S.A., Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837, 842–43, 104 S.Ct. 2778, 2781–82, 81 L.Ed.2d 694 (1984)).[7] If, however, "the court determines Congress has not directly addressed the precise question at issue," then we must decide whether the agency's interpretation is reasonable. *Chevron*, 467 U.S. at 845, 104 S.Ct. at 2783; *Inman*, 30 F.3d at 843. To be sure, in this circuit the degree of deference given to the agency in this latter inquiry is greater for "those statements of legislative intent that the agency embodies in formal regulations," than it is for "those

---

**5.** Although the Department was interpreting its Policy Manual when it classified plaintiff's discharge as not involving a question of professional conduct or competence, this manual simply reiterates the statutory language. Thus, for simplicity, we will consider the Department to have been interpreting the statutes it is authorized to administer.

**6.** *See* 38 U.S.C. § 7461(c)(2) (defining major adverse actions).

**7.** We note that the *Chevron* analysis only applies to an agency's interpretation of a statute that it is

authorized to administer. *Chevron*, 467 U.S. at 842, 844, 104 S.Ct. at 2781, 2782–83; *see Atchison, Topeka and Santa Fe Ry. Co. v. Peña*, 44 F.3d 437, 441 (7th Cir.1994) (en banc), *cert. granted*, —— U.S. ——, 115 S.Ct. 2575, 132 L.Ed.2d 826 (1995). In this case, the Department is authorized to "prescribe all rules and regulations which are necessary or appropriate to carry out the laws administered by the Department and are consistent with those laws." 38 U.S.C. § 501(a).

more informal statements that do not necessarily reflect the deliberate focus of the entire agency on the issue of congressional intent." *Pennington v. Didrickson*, 22 F.3d 1376, 1383 (7th Cir.), *cert. denied*, —— U.S. ——, 115 S.Ct. 613, 130 L.Ed.2d 522 (1994); *but see Wagner Seed Co. v. Bush*, 946 F.2d 918, 922 (D.C.Cir.1991) ("In any event, it simply is not the law of this circuit that an interpretive regulation does not receive the *Chevron* deference accorded a legislative regulation."), *cert. denied*, 503 U.S. 970, 112 S.Ct. 1584, 118 L.Ed.2d 304 (1992). Nonetheless, "these informal interpretations are still entitled to some weight on judicial review." *Martin v. Occupational Safety and Health Review Comm'n*, 499 U.S. 144, 157, 111 S.Ct. 1171, 1179, 113 L.Ed.2d 117 (1991).

In this case, we are faced with an agency's informal interpretation of its own statutes in the course of a disciplinary proceeding against an employee. We therefore look to 38 U.S.C. § 7461(c)(3), the statutory provision that defines a "question of professional conduct or competence."[8] As discussed above, this section defines such questions as those involving direct patient care and clinical competence. However, it does not indicate whether an employee's insubordination for failing to submit to an examination of his direct patient care or clinical competence also falls within this definition. As the statute is silent on the precise issue in question, and no answer is necessarily implied by the language of § 7461(c)(3), we conclude that the meaning of the statute in this regard is unclear.

We thus turn to whether the agency's informal interpretation of this provision is persuasive. *See Skidmore v. Swift & Co.*, 323 U.S. 134, 140, 65 S.Ct. 161, 164, 89 L.Ed. 124 (1944). In dismissing Dr. Gergans from his employment at the hospital, the Department[9] concluded that the adverse action did not involve a question of professional conduct or competence, since he was charged with insubordination and unsatisfactory attendance. Although he was required to submit to an examination because of questions about his medical competence and psychiatric well-being, his discharge was not based on either of these two factors. Rather, disciplinary action was considered because plaintiff refused to comply with direct orders from a supervisor and failed to satisfy the hospital's attendance requirements.

 We are persuaded by the agency that this interpretation of § 7461(c)(3) is correct. It is apparent that the Disciplinary Appeals Board was created in order to evaluate serious charges against an employee relating to his or her medical proficiency and competence. *See* 38 U.S.C. § 7462(a) (discussing jurisdiction of the Board). For example, the Board, which may only hear appeals from "major adverse actions," is comprised of three members, each of whom must be at least the same grade as the appealing doctor and two of whom must be in the same category of position as the appellant. 38 U.S.C. § 7464(a). Moreover, members of the Board must be found qualified to serve by the Secretary of Veterans Affairs, and may be required to undergo training. *Id.* § 7464(d). Such specialization is not necessary when evaluating generic sorts of misconduct—such as absenteeism—that can arise in any employment situation. In those cases, the grievance procedures outlined in § 7463 or the employee's collective bargaining agreement are sufficient to review the adverse personnel action. Thus, given the ambiguity of § 7461(c)(2), if the Department wishes to classify insubordination as outside the jurisdiction of the Disciplinary Appeals Board, even *insubordination that stems from a dispute about the employee's professional conduct or competence*, we cannot conclude that this interpretation is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A). In the instant case, Dr. Gergans was not discharged for reasons related to his medical competency, but for his insubordination and absenteeism. The fact that his conduct arose because of a dispute over

---

**8.** Inexplicably, neither party has discussed whether the meaning of this statute is clear, or whether the Department's interpretation is entitled to deference.

**9.** Although the exact decisionmaker was the Director of Hines, we will consider this decision to have been made by the Department.

his medical competence does not alter the nature of the charges against him.[10]

Accordingly, because we are persuaded that the Department's interpretation of § 7461(c)(2) and its own Policy Manual was correct, we grant defendant's motion for summary judgment.

## IV. Conclusion

For the reasons set forth above, plaintiff's motion for summary judgment is denied and defendant's motion for summary judgment is granted. It is so ordered.

See also, 1995 WL 319768.

---

**10.** To be sure, the characterization of a personnel action is blurred when the charged misconduct arises because of a dispute over the employee's professional conduct or competence. Indeed, the Department initially classified plaintiff's suspension as within the appellate jurisdiction of the Disciplinary Appeals Board. However, the Director of Hines amended her suspension decision to indicate that the action was not based on plaintiff's professional conduct or competence, and we find this conclusion persuasive for the reasons stated above. Moreover, because the initial classification was promptly amended to reflect the Department's actual position, we do not believe it demonstrates any inconsistency on the Department's behalf.