Diana MINELLA, Plaintiff,

v.

CITY OF SAN ANTONIO, TEXAS,
a Municipal Corporation,[1]
Defendant.

No. CIV.A. SA–03–CA246FB.

United States District Court,
W.D. Texas,
San Antonio Division.

March 9, 2005.

---

1. Plaintiff originally brought suit against the City of San Antonio, the mayor, city council members, civil service commission members, the city manager and the city attorney. Pursuant to the Order Regarding Cross–Motions for Summary Judgment (docket no. 59), the only remaining defendant is the City of San Antonio.

Carla B. Morrison, Carla B. Morrison, P.L.L.C., San Antonio, TX, for Diana Minella, plaintiff.

Lowell F. Denton, Susan C. Rocha, Denton Navarro Rocha & Bernal, P.C., San Antonio, TX, for City of San Antonio, Texas, Edward. Garza, Mayor of City of San Antonio, Bobby Perez, City Council Member, John H. Sanders, City Council Member, Antoniette Moorhouse, City Council Member, Enrique Martin, City Council Member, David A. Garcia, City Council Member, Enrique M. Barrera, City Council Member, Julian Castro, City Council Member, Bonnie Conner, City Council Member, Carroll Schubert, City Council Member, David Carpenter, City Council Member, Terry Brechtel, City Manager, Martin, City Attorney, Municipal Civil Service Commission, Gilberto V. Tobias, Municipal Civil Service Commission Chairman, Juretta Marshall, Municipal Civil Service Commission Member, defendants.

Mayo J. Galindo, Attorney at Law, San Antonio, TX, for Lisa A. Gardner, Carrie Bond, Archie L. Stogsdill, Beatrice C. Hernandez, Herlinda C. Serna, amicuss.

## OPINION AND ORDER ON DEFENDANT'S MOTION FOR NEW TRIAL [2]

BIERY, District Judge.

**Undisputed Confusion Clarified.**

*A BRIEF PRIMER ON SAN ANTONIO CITY GOVERNMENT*

Prior to January 1, 1952, San Antonio operated under a so-called strong mayor system of government, though perhaps not to the extent of the Tweed Machine of New York City or the Pendergrast family of Kansas City. Nevertheless, San Antonio voters believed in 1951 it was time to

---

**2.** Defendant's motion might also aptly be called a motion to snatch victory from the jaws of defeat.

change to council-manager governance. Before then, there was no civil service protection for city professionals, such as assistant city attorneys. For example, those who did not succumb to pressure to fix traffic tickets for the politically well-connected perceived their positions being lost shortly thereafter. One was a young traffic court judge named Samuel F. Biery. The council-manager system was implemented over time by city councilmen, attorneys and managers including Carlos Cadena, Mayo Galindo, Henry B. Gonzalez, Harvey L. Hardy, Gerald Henckel, Mike Machado, and Jack Skipper.

Following the sovereign voters' adoption of council-manager government, the Municipal Civil Service Rules and Regulations were approved in 1951[3] to prevent patronage abuses, those civil service concepts being reaffirmed in the city charter in 1977. In an example of history coming full circle, the people of San Antonio have now determined city professionals should not have civil service protection and perhaps once again be subject to the whims of supervisors or the politically powerful. *See* Proposition 3 (Charter election of November 6, 2001, removing "certain licensed professionals and executive job classifications from Municipal Civil Service coverage and protection, specifically, assistant directors of City Departments, architects, assistant auditors, attorneys, dentists, doctors, engineers, psychologists, [and] veterinarians . . . ."). But the people get just about the kind of government they deserve.[4] *Dutmer v. City of San Antonio,* 937 F.Supp. 587, 589 (W.D.Tex.1996) (regarding San Antonio's extreme version of term limits) ("If history judges the term limits movement an idea whose time should not have come, the evolutionary experiment called democracy includes the right to make mistakes and, ultimately, delivers just about the kind of government voters deserve.") (Biery, J.); HARVEY L. HARDY, A LIFETIME AT THE BAR: A LAWYER'S MEMOIR 102 (Vantage Press, Inc. 1999) ("The biggest drawback to democracy is the intermittent phenomena of half-baked mass hysteria over issues of little or no importance in a well-balanced scheme of things.").

## BACKGROUND

Plaintiff, an assistant San Antonio city attorney, was discharged on January 13, 2003, for insubordination after she violated City Attorney Andrew Martin's directive that she confirm she was no longer exercising the duties of a municipal court judge for the City of Live Oak while also acting as a municipal prosecutor for the City of San Antonio. Defendant denied plaintiff's request she be allowed to participate in the civil service process. The denial was based upon the voters' November 6, 2001, approval of Proposition Three, a charter amendment which removed civil service protection from certain positions, including the assistant city attorney position held by plaintiff. Plaintiff filed suit alleging, among other things, her rights to procedural and substantive due process were violated. Defendant denied any wrongdoing.

Cross-motions for summary judgment were filed. Both before and after voters approved Proposition Three, ordinances were passed which required city council to

---

**3.** Amicus Curiae brief (docket no. 56), page 3.

**4.** "Every country has the government it deserves." Joseph Marie de Maistre, letter to M. le chevalier of August 15, 1811, book 1 264 (Lettres et Opuscules Inédits du Comte J. De Maistre, 5th ed.) (1869) (French writer and diplomat). The same idea is also attributed by numerous writers to Baron de Montesquieu (1689–1755), Thomas Jefferson (1743–1826), Abraham Lincoln (1809–1865), and Sir Winston Churchill (1874–1965).

take action, either by order or separate ordinance, stating the effective date of the amendments.[5] In the previous summary judgment proceeding leading to this Court's order of September 9, 2004, defendant did not suggest nor present any evidence an order or separate ordinance was passed setting forth the effective date of the charter amendments. Instead, defendant maintained canvassing the votes alone was sufficient to implement the election results and, therefore, the language requiring council to set an effective date was surplusage. This Court disagreed and found that, because council had not entered an order or separate order stating an effective date, the amendment removing civil service protection never took effect under the very rules established by the city. Order Regarding Cross–Motions for Summary Judgment (docket no. 59).

## DISCUSSION

### Motion for New Trial

In a motion for new trial, defendant abandons its surplusage argument and admits "the Court is correct in stating that canvassing alone is not sufficient to put the amendments into effect." For the first time, defendant argues the language in the ordinances requiring council to set an effective date for the charter amendments conflicts with state law. Defendant also for the first time now provides evidence supplementing the summary judgment record with Ordinance 96399. This ordinance adopts the "Annual Consolidated Operating and Capital Budgets for the City of San Antonio for the Fiscal Year 2002–

2003." Defendant asserts Ordinance 96399 establishes the city did in fact take action by separate ordinance thereby making Proposition Three effective. Because there appears to be no reason for defendant not to have raised these arguments and summary judgment evidence sooner, and because no reason for the delay is given, a strong argument can be made that the city waived its right to raise these new legal theories. A district court is within its discretion to summarily deny a motion for new trial based on summary judgment arguments and evidence not previously presented. *RLI Ins. Co. v. Maxxon S.W. Inc.*, No. 03–10660, 2004 WL 1941757, at *5 (5th Cir. Sept.1, 2004). This is especially true in the absence of a reason why the arguments and evidence were not raised sooner. *Id.* Nonetheless, in the interest of justice and because the underlying issue will ultimately have to be addressed in this or other litigation (*see Gardner v. City of San Antonio*, Cause No.2003–CI–11520, now pending in the District Court of Bexar County, 408th Judicial District), the Court will consider defendant's motion for new trial.

### Conflict With State Law and Ordinance No. 96399

Language in Ordinances 94375 and 94956 provides the charter amendments would become "effective when the City Council enters an order stating an effective date of the propositions" and "when the City Council takes separate action by separate ordinance stating the effective

---

**5.** Ordinance 94375, passed by city council before the election, states: *"Propositions approved by a majority of the voters voting shall become effective when the City Council enters an order stating an effective date of the propositions* and states on the records of the City declaring that the Charter amendments have been adopted." (emphasis added). Following the canvass of the vote pursuant to the elec-

tion code, city council enacted Ordinance 94956, which adopted the charter amendment eliminating civil service protection. Ordinance 94956 provides: *"[T]hese Charter Amendments shall take effect when the City Council takes action by separate ordinance stating the effective date of each prospective proposition."* (emphasis added).

date of each prospective proposition." On rehearing, defendant argues this language is invalid because it conflicts with state law, particularly section 9.005(b) of the Texas Local Government Code. TEX. LOC. GOV'T CODE ANN. § 9.005(b) (Vernon 1999). Section 9.005, which controls the adoption of charter amendments by a municipality, is silent on the issue of setting a separate effective date. *See id.* § 9.005. However, subpart (b) provides:

A charter or an amendment does not take effect until the governing body of a municipality enters an order in the records of the municipality declaring that the charter or amendment is adopted.

*Id.* § 9.005(b). Defendant contends, because section 9.005(b) states an amendment "does not take effect until" it is adopted, the amendment necessarily takes effect when it is adopted. Therefore, defendant maintains, "the charter amendments were put into effect when the council entered an order declaring the majority of the voters adopted the charter amendment in Ordinance No. 94956." Accordingly, defendant concludes, language in the ordinances calling for city council to take separate action setting forth an effective date is in conflict with state law and, therefore, invalid.

Plaintiff maintains there is no conflict. Section 51.072(a) of the local government code, plaintiff notes, gives a municipality "full power of local self-government," TEX. LOC. GOV'T CODE ANN. § 51.072(a) (Vernon 1999), and neither section 9.005(b) nor any other provision of the code specifically restricts a home rule municipality's power to insert "effective date language" in an ordinance. *See id.* Given the broad authority granted to, and considering the lack of legislative limitations upon, a home rule municipality, plaintiff maintains city council was within its authority under state law when it imposed the setting of a separate effective date for the charter amendments. Therefore,

plaintiff concludes, there is not a conflict and the language contained in the ordinances is valid.

Putting aside the question of whether the 2001 council wrote and passed an invalid ordinance, defendant's own submissions contradict its statement that council "acted consistently with the belief and legislative conclusion" that "the charter amendments were put into effect" by operation of state law at the time of adoption. Defendant argues for purposes of these proceedings that all three charter amendments passed by the voters on November 6, 2001, including Proposition Three, the subject of this dispute, went into effect as mandated by section 9.005(b) of local government code when they were adopted by city council on November 15, 2001. TEX. LOC. GOV'T CODE ANN. § 9.005(b) (Vernon 1999). It attaches to its motion for new trial, however, evidence showing that council passed subsequent ordinances for Proposition One and Proposition Two apart from declaring the approval and adoption of the charter amendments. *See* Motion for New Trial (docket no. 62), Exhibits C & D. Specifically, city council took separate action to pass an ordinance to hire a city attorney in accordance with Proposition One. *Id.* at Exhibit D. The ordinance appointing Andrew Martin to the position states: "This ordinance shall take effect on April 1, 2002." *Id.* Council also took separate action to pass an ordinance to hire a city auditor in accordance with Proposition Two. *Id.* at Exhibit C. The ordinance appointing the city auditor provides: "This ordinance shall become effective on the tenth day after" January 30, 2003. *Id.* Defendant's own evidence thus shows that council made subsequent enactments apparently based on the assumption that "action by separate ordinance" was necessary before the charter amendments would take effect.

■ In any event, the Court leaves for another day the question of whether a conflict exists between state law and the language at issue. Even if separate action apart from declaring the adoption of the charter amendments was necessary, such separate action did occur when city council passed the ordinance which declassified certain civil service positions in accordance with Proposition Three. The city's budget Ordinance 96399, passed on September 19, 2002, is an ordinance approving the budget for the 2002–2003 fiscal year. Motion for New Trial (docket no. 62), Exhibit A. This ordinance expressly lists those jobs covered by the charter amendment, including that of assistant city attorney, as "unclassified" positions, meaning they are no longer covered by civil service protection. *Id.* at Attachment IV to Ordinance No. 96399, Pay Plan, page 20. The ordinance states it "shall take effect on the first day of October, 2002." *Id.* at Exhibit A, page 12. It is undisputed that previous budget ordinances had not identified these jobs as unclassified. The 2002–2003 budget ordinance thus implemented the charter amendment at issue, effective October 1, 2002.

This conclusion is supported by the deposition testimony of Elisa Bernal, the Director of Human Resources for the City of San Antonio during the relevant time period and the person with direct supervisory responsibility over the Civil Service Commission. With regard to the effective date of the charter amendment, Ms. Bernal testified she believed, based upon "what [she] heard" and "the advice that [she] got," that Proposition Three was not to take immediate effect after the voters approved the charter amendment. Plaintiff's Response in Opposition to Motion for New Trial (docket no. 71), deposition of Elisa P. Bernal, Exhibit B, page 25, lines 1–24. And, notably, she stated there was no immediate change regarding the civil service status of employees after the November 2001

vote. *Id.* at page 35, lines 6–9. It was her understanding, Ms. Bernal continued, that Proposition Three would not take effect for about a year, coinciding with the October 2002 budget adoption. *Id.* at page 25, lines 19–24; page 26, lines 6–25; page 27, lines 1–25; page 28, lines 1–23; page 35, lines 10–20. This ordinance, she implied, implemented the removal of civil service protection for city attorneys and other employees by reclassifying their positions pursuant to the charter amendment. *See id.* In fact, Ordinance 96399, the "Annual Consolidated Operating and Capital Budgets for the City of San Antonio for the Fiscal Year 2002–2003," was passed on September 19, 2002, and took "effect the first day of October, 2002." *See* Motion for New Trial (docket no. 62), Exhibit A, page 1 and page 12. As of that date, October 1, 2002, plaintiff was no longer covered by civil service protection.

Based upon this belatedly provided evidence, the Court holds that council took the necessary action by separate order or ordinance setting forth an effective date for Proposition Three in accordance with the language of council's previous mandate. Having found budget Ordinance 96399 was an order or separate ordinance effectuating the charter amendment approved in Proposition Three, the Court must address plaintiff's claims she was denied procedural and substantive due process when she was not given the opportunity to participate in the civil service process.

*Procedural Due Process*

Plaintiff maintains she should be "grandfathered" in under the rules as they existed before the time she was discharged because she has an irrevocable employment relationship with the City of San Antonio. Because the charter amendment removing civil service protection went into

effect with the adoption of the budget ordinance in the fall of 2002, and plaintiff was not fired until January of 2003, her position as assistant city attorney was unclassified at the time she was discharged. Plaintiff is therefore not entitled to challenge her termination through the civil service process unless to deny her the opportunity to do so would subject her to a violation of procedural due process guarantees. *See* U.S. CONST. amend. XIV, § 1; TEX. CONST. art. I, § 19; *see also* Plaintiff's First Amended Complaint and Jury Demand (docket no. 25), page 19 (alleging contractual violations). Plaintiff argues she had a right to her protected status which could not be removed by the voters or anyone else. Defendant disagrees.

### A. Property Interest

■ As a fully vested classified civil servant in her position as an assistant city attorney with the city, plaintiff presumably had a cognizable property interest in continued employment entitled to constitutional protection. *Cleveland Bd. of Educ. v. Loudermill,* 470 U.S. 532, 538–39, 105 S.Ct. 1487, 84 L.Ed.2d 494 (1985); *Davis v. City of San Antonio,* 739 S.W.2d 394, 396 (Tex.App.-San Antonio 1987) (citing *Bueno v. City of Donna,* 714 F.2d 484, 492 (5th Cir.1983)), *rev'd on other grounds,* 752 S.W.2d 518 (Tex.1988); *see also Rosow v. City of San Antonio,* 734 S.W.2d 659, 659–61 (Tex.1987). This property interest was lost, however, when council took action after the voters, who had originally bestowed the right to civil service protection upon plaintiff in the first instance, exercised their power to remove it from the city charter. *See City of Amarillo v. Hancock,* 150 Tex. 231, 235–38, 239 S.W.2d 788, 791–92 (1951) (city may entirely abolish property right created by civil service classification); *Smith v. City of Port Arthur,* 62 S.W.2d 385, 387 (Tex.Civ.App.-Beaumont 1933, no writ) (vested right in employment can be modified, amended, or even completely abolished by authorities which gave it life); *Bennett v. City of Longview,* 268 S.W. 786, 787 (Tex.Civ. App.-Texarkana 1925, no writ) (voters have power to set aside or modify what would have otherwise been an authorized position and entitlement to benefits); *see also Tarrant County v. Ashmore,* 635 S.W.2d 417, 421 (Tex.1982) (Public office can be lost not only by election at end of term but "by any other constitutionally permissible means."), *cert. denied,* 459 U.S. 1038, 103 S.Ct. 452, 74 L.Ed.2d 606 (1982); *Moulton v. City of Beaumont,* 991 F.2d 227, 232 (5th Cir.1993) (property interest created by original employee manual can be revoked by revised manual).

Plaintiff distinguishes the cases cited by the Court to support this conclusion. She first notes the Texas Supreme Court's decision in *Hancock* is distinguishable because it involves the abolishment, rather than the declassification, of a civil service position. 150 Tex. at 237–38, 239 S.W.2d at 792. When discussing the "vested property right" issue, the Court stated:

> Clearly plaintiff had no vested property right in his captaincy before the passage of the Civil Service Act in question. He could be employed, promoted, demoted, or discharged within the judgment and discretion of his department head.

> [T]he city council, a body with delegated legislative power, has the power to create positions, adopt the Civil Service Commission classification plan, set the rate of pay and abolish positions.... The City of Amarillo may abolish the particular captain's position which plaintiff occupies or all captains' positions, for that matter, or the rank of captain entirely....

150 Tex. at 235–37, 239 S.W.2d at 791–92. Although not directly on point, *Hancock* is analogous in the sense that the right to a captain's rank depended on the ordinance

creating the number of authorized positions in the first instance. *See id.* There, as here, once the enabling ordinance was eliminated, any potential right which may have been created by civil service protection was lost.

Plaintiff next argues the Texas appellate court decisions in *Smith, Bennett,* and *Tarrant County* are distinguishable because they involved elected or appointed officeholders who, unlike plaintiff, were not hired into classified civil service positions. *See Smith,* 62 S.W.2d at 387; *Bennett,* 268 S.W. at 787; *see also Tarrant County,* 635 S.W.2d at 421. At least some cases, including those raised in the amicus brief filed by other similarly situated former City of San Antonio employees, which discuss the distinction between a public officer and a public employee are contrary to the suggestion that an employee has a greater entitlement to employment than a public officer. *Aldine Indep. Sch. Dist. v. Standley,* 154 Tex. 547, 280 S.W.2d 578, 586 (1955) (respondent tax assessor-collector, not being public officer, was subject to removal at any time by power appointing him); *Dunbar v. Brazoria County,* 224 S.W.2d 738, 741 (Tex.Civ.App.-Galveston 1949, writ ref'd) (county road engineer was not public official and therefore subject to removal at any time). In any event, the issue in cases defining the protected property concept does not appear to be the difference between a public official and an employee, but the legitimate expectation of an entitlement to the continuance of existing laws or rules. For example, even retirement benefits of a vested employee are subject to modification of the underlying legal principles by the original author of those provisions in existing state law. *See Reames v. Police Officers' Pension Bd.,* 928 S.W.2d 628, 629–31 (Tex.App.-Houston [14th Dist.] 1996, no writ) (retired police officer lost right to continue to receive retirement benefits due to changes in underlying law and structure of fund). Thus,

public officials and city employees alike, even those who have retired, have been subject to the loss of their employment benefits by the exercise of the right to change or amend organic law by the sovereign, in this case the citizens of San Antonio.

Plaintiff also contends the case decided by the Fifth Circuit Court of Appeals is distinguishable because she was a vested civil servant with the city, while the *Moulton* plaintiff was not. *See* 991 F.2d at 229–30. While it is true Mr. Moulton was not hired into a civil service position, he did have a vested property interest in his continued employment created by a company manual. *Id.* at 231. The Court explained, however, that while cases have held that a property right can be founded on personnel manual provisions limiting discharge to one for cause, a revised personnel manual had eliminated any such status in Mr. Moulton's case. *Id.* at 232. Once again, the elimination of the right at its source was found to be lawful and consistent with constitutional protections. *See id.* If a formerly protected property interest can be taken away by administrative action alone, it is reasonable to conclude the voters may in this case amend away such status at its foundation.

Texas and the Fifth Circuit Court of Appeals are not alone in applying this analysis to claims of entitlement to due process. The Ninth Circuit considered these issues in *Brady v. Gebbie,* 859 F.2d 1543 (9th Cir.1988), *cert. denied,* 489 U.S. 1100, 109 S.Ct. 1577, 103 L.Ed.2d 943 (1989). Plaintiff was a former state medical examiner who had held a classified civil service position until the classification was eliminated by an amendment to Oregon state law. *Id.* at 1545. After the amendment, Dr. Brady was discharged. *Id.* at 1546. In upholding a directed verdict against the doctor on his property interest

claim, the Ninth Circuit Court of Appeals stated:

> Moreover, ... the state moved the State Medical Examiner position from classified to unclassified service. In doing so it removed the protections associated with classified service, including the requirement that the state discharge employees holding positions in classified service only for cause.

*Id.* at 1550. The Court thus rejected plaintiff's claim that the former classification of the position created a property right which could not be removed. *Id.* at 1449–50. As with the rationale in the Texas cases, once the law granting procedural rights to an employee had been eliminated or revised so as to no longer apply, the employee no longer had a protected property interest in those rights. *See id.*

In *Hinchliffe v. City of San Diego*, a California state court declined to find a police officer was deprived of a property right when the city charter was amended to convert her from an employee who could only be fired for cause to an employee who served at will. 165 Cal.App.3d 722, 724–25, 211 Cal.Rptr. 560, 560–61 (Cal. App. 4 Dist.1985). "[E]mployees of charter governments," the Court noted, "work subject to the amendment, revision or repeal of charter provisions affecting their employment." *Id.* at 725, 211 Cal.Rptr. at 561.

Plaintiff states *Cleveland Board of Education v. Loudermill* and its progeny establish she has a valid property right in civil service protection which cannot be lawfully disturbed. *See* 470 U.S. 532, 105 S.Ct. 1487, 84 L.Ed.2d 494 (1985); *Davis v. City of San Antonio*, 739 S.W.2d 394 (Tex.App.-San Antonio 1987) (citing *Bueno v. City of Donna*, 714 F.2d 484, 491–93 (5th Cir.1983)), *rev'd on other grounds*, 752 S.W.2d 518 (Tex.1988); *see also Rosow v. City of San Antonio*, 734 S.W.2d 659 (Tex. 1987). None of these procedural due process cases, however, discuss the elimination or modification of the foundation in state authority which formerly created an expectation of a continued position.

The Supreme Court has determined the existence of a protected right is evaluated by an analysis of relevant state law. *Board of Regents of State Colls. v. Roth*, 408 U.S. 564, 577, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972). Each case cited by plaintiff in support of her property interest claim involves some deprivation of position or employment other than elimination of its enabling provision. In *Loudermill*, a classified civil service employee was dismissed for allegedly lying on his application about a felony conviction without any notice or pre-termination hearing, although he was allowed to appeal in an administrative hearing held months later. 470 U.S. at 535, 105 S.Ct. 1487. The United States Supreme Court held that state law may elect whether or not to provide a protected status, but once it has chosen to do so, the protections which apply are governed by the due process clause. *Id.* at 541, 105 S.Ct. 1487. The Court did not examine the issue of modification or repeal of an employee's classified status. *See id.* The other cases upon which plaintiff relies also do not address the removal of the organic law upon which the claimed rights were founded. *See Bueno*, 714 F.2d at 491–93 (plaintiff's due process claim was founded on personnel policies limiting discharge by department heads to "just cause;" no issue presented involving modification or repeal of underlying right); *Davis*, 739 S.W.2d at 396–97 (charter civil service rules specifying eighteen grounds for removal created due process rights which were not denied when plaintiff chose not to appeal; no issue presented involving modification or repeal of underlying right); *see also Rosow*, 734 S.W.2d at 659–61 (terminated employee with civil service status

appealed from a jury verdict based on arbitrary and capricious failure of decision maker to consider facts presented to civil service commission during hearing; no issue presented on modification or repeal of underlying right). Moreover, other courts have addressed *Loudermill* and its requirements and held them inapplicable to rights later modified or repealed. *See Pittman v. Chicago Bd. of Educ.*, 64 F.3d 1098, 1104 (7th Cir.1995) (principal's tenure rights could be changed by statutory amendment without running afoul of *Loudermill*), *cert. denied*, 517 U.S. 1243, 116 S.Ct. 2497, 135 L.Ed.2d 189 (1996); *Harris v. Iles*, Nos. 86–6761 & 87–6562, 1989 WL 88413, at *3–4 (9th Cir. July 31, 1989) (employee had no entitlement to prior statutory standard for discharge despite holding of *Loudermill*, after amendment substituted "at the pleasure of the judges" standard for court clerks); *Gattis v. Gravett*, 806 F.2d 778, 781 (8th Cir.1986) (*Loudermill* notwithstanding, legislative process was only process due where Arkansas legislature extinguished prior protected property interest of sheriff's department employees above certain rank).

Amicus counsel supplemented the record with the case of *County of Dallas v. Wiland*, 124 S.W.3d 390 (Tex.App.-Dallas 2003, pet. granted). This matter also involved an attempt to impair protected rights while the structure of civil service, and its original foundation, remained in place. *See id.* at 398. When discussing protected property rights the Court stated:

> At oral argument the County conceded that it did not change the terms affecting civil service employee's property interests at any time during the deputies employment and termination. The mere possibility that such terms may change does not render existing civil service protections meaningless. *See Ingram [v. Dallas County]*, 688 F.Supp. 1146,] 1152–53 (N.D.Tex.1988) ] (Dallas County

Category "C" civil service employee had property interest despite County's ability to unilaterally change civil service rules, where there was no evidence that County had done so).

*Id.* In this case, unlike *Wiland*, the civil service rules were changed.

A review of the relevant authorities includes various scenarios where a legal entitlement to a position was modified or eliminated at its source. Under these cases, a vested right can be modified, amended, or even completely abolished by the authority or authorities which gave it life in the first instance. None of the distinctions offered by plaintiff, nor *Loudermill* and its progeny, appear to alter this principle or its application here. Accordingly, this Court holds plaintiff had no expectation of continued civil service employment once the sovereign voters exercised their power to remove the protections civil service employment offered from the city charter and council put the amendment into effect. Summary judgment is therefore entered in defendant's favor on plaintiff's property interest claim.

### B. Breach of Contract

*Risley v. Board of Civil Service Commissioners* is a case involving a charter amendment which abrogated seniority rights of employees to promotional advantage and insulation against layoffs in the event of a reduction in force. 60 Cal. App.2d 32, 35–36, 140 P.2d 167 (1943). As in this case, plaintiffs claimed the revisions to the charter approved by the voters were "an unconstitutional attempt to impair the contracts they have with the city; its effect would be to deprive plaintiffs of their property without due process of law ...." *Id.* at 36–37, 140 P.2d 167. Those plaintiffs also had civil service positions, protected against discharge other than for cause, and a right to appeal for review if discharged.

*Id.* The Court found these were not true contractual relationships, but a relationship based on the charter-defined status of a class of employees. *Id.* at 37, 140 P.2d 167. "The rights to which plaintiffs would cling," the Court continued, "are created by or under the provisions of the charter and are dependent upon those provisions." *Id.* Accordingly, "[t]hey may all be lost by the repeal of the provisions or modified by an amendment to the provisions, at the will of those who determine what the charter's terms shall be." *Id.*

Plaintiff states this holding is "stale" in light of *Loudermill. See* 470 U.S. 532, 105 S.Ct. 1487, 84 L.Ed.2d 494 (1985). As discussed above, in *Risley*, the Court addressed the question of whether plaintiffs had a vested, contractual right to have the terms of their employment continue unaffected by a charter amendment which removed civil service protection, and found they did not. 60 Cal.App.2d at 37, 140 P.2d 167. The Court explained:

> Plaintiffs' first two contentions may be considered together, as they involve the same fallacious concept, which is, that plaintiffs have a vested, contractual, right to have the terms of their employment continue unaffected by charter amendments. That they have rights, by virtue of the provisions of the charter, which the courts will protect against unauthorized infringement by the city or any of its legislative or executive officers or boards, is undoubtedly true, and is recognized in the large number of cases cited by the plaintiffs. But that these rights are vested, contractual, rights, protected by the state and federal constitutional provisions forbidding the impairment of contracts and the taking of "property" without due process, so that they cannot be changed, is not true, and none of the cases relied upon by plaintiffs holds it to be true.

*Id.* Employees with civil service protection are not therefore vested so as to be immune from modification by the electorate and, as employees of a charter government, they work subject to the amendment, revision or repeal of charter provisions affecting their employment. *See id.; see also Hinchliffe*, 165 Cal.App.3d at 724, 725, 211 Cal.Rptr. at 561 (public employee can have no vested contractual right in terms of her employment because such terms are subject to change by proper authority).

Given that *Loudermill* did not consider whether the creators of the organic law governing plaintiff's employment could modify her position before its expiration, this Court does not find the analysis of *Risley* to be stale. As stated in *Smith v. City of Port Arthur*, "[e]very city officer created or character of employment contracted for is subject to abolition by the exercise of the right of the people of the city to change or amend its organic law." 62 S.W.2d 385, 387 (Tex.Civ.App.-Beaumont 1933, no writ). Under plaintiff's civil service classification as it existed before its repeal by the voters, plaintiff may have had a contractually protected interest in the procedures which she maintains she was denied. However, once her civil service classification was removed, she had none. Summary judgment is therefore entered in defendant's favor on plaintiff's contractual claim.

## C. Retroactive Application of the Law

The same principle established by the cases discussed above-the rights of a public employee are subject to the superior right of the electorate and the Legislature to modify or abolish them-seemingly applies to plaintiff's claim that the removal of her civil service status violated the anti-retroactivity provision of the Texas Constitution. *See* TEX. CONST. art. I, § 16. In the context of a claim for violation of anti-

retroactivity provisions involving retirement benefits, Texas cases have applied the same rationale to hold that enabling authorities have a superior right to eliminate an employee's rights at their source. *See Williams v. Houston Firemen's Relief & Ret. Fund*, 121 S.W.3d 415, 431–32 (Houston [1st Dist.] 2003, no pet.) (repeal and replacement of state statute allowing working firefighter to receive credit towards retirement for prior service did not violate anti-retroactivity provisions); *Reames v. Police Officers' Pension Bd.*, 928 S.W.2d 628 (Tex. App.-Houston [14th Dist.] 1996, no writ) (repeal of state statute allowing police officer to receive retirement benefits and salary did not retroactively remove property right).

In any event, as defendant notes, "plaintiff has failed to present summary judgment argument or authority to demonstrate exactly what is retroactive about the removal of her civil service classification." Plaintiff does not argue defendant is trying to apply the removal of her civil service status to a claim which she made under that status prior to its removal.[6] Nor does she argue that she previously exercised a right under her status prior to its removal which the city is now denying.[7] "Plaintiff's

---

6. The 2002–2003 budget ordinance which declassified assistant city attorney positions took effect on October 1, 2002. Motion for New Trial (docket no. 62) at Exhibit A, page 12. It was not until three days later, on October 4, 2002, that plaintiff filed her first grievance. Plaintiff's First Amended Complaint and Jury Demand (docket no. 25), page 13. She thus had not begun the civil service process prior to the effective date of the charter amendment.

7. Defendant concedes "an employee discharged at a time prior to the charter amendment, and in the process of having a hearing on the substantive merits or justification of the decision" may be entitled to complete the civil service process. Reply to Plaintiff's Response to Motion for Summary Judgment and Response to Plaintiff's Cross–Motion for Summary Judgment (docket no. 49), page 6, n.3. Although not before the Court because plaintiff did not raise the issue in the summary judgment proceedings or in her response to the motion for new trial, plaintiff alleges in her amended complaint that defendant applied the civil service rules to her after the effective date of the charter amendment. Plaintiff's First Amended Complaint and Jury Demand (docket no. 25), pages 11—14. Even though plaintiff was not a classified employee and therefore not eligible to participate in the civil service process as of October 1, 2002, and even though City Attorney Martin stated his belief that the charter amendment had already taken effect, meaning plaintiff had no civil service protection, plaintiff alleges City Attorney Martin referred to the civil service rules at a September 24, 2002, meeting when he told her she would need his permission to accept outside employment as a municipal court judge for the City of Live Oak. *Id.* at page 12. Plaintiff also alleges defendant accepted civil service grievances she filed throughout the fall and winter of 2002, challenging City Attorney Martin's decision to refuse his permission for the outside employment and, in January of 2003, accepted her appeal challenging the city's decision to terminate her employment. *Id.* at pages 13–14. Plaintiff thus implies she should be entitled to participate after the charter amendment went into effect because defendant "continued to apply and operate pursuant to the civil service rules vis a vis plaintiff." *See id.* Presuming it is true that defendant accepted her grievances after the charter amendment went into effect on October 1, 2002, plaintiff admits she "was thereafter neither · contacted regarding the matter nor allowed by defendant[ ] to grieve City Attorney Martin's decision regarding her outside employment through the civil service grievance procedure." *Id.* at page 14. She also acknowledges she was "never provided a hearing in front of the civil service commission regarding her appeal of the city's decision to terminate her employment." *Id.* As plaintiff was not discharged until January 13, 2003, months after the charter amendment went into effect on October 1, 2002, and as she admittedly was never in the process of having a hearing on the substantive merits of her complaints, the Court questions whether City Attorney Martin's reference to the civil service rules and defendant's acceptance of her grievances would sustain such a claim, even if properly raised.

complaint is not," defendant continues, "that the city is attempting to rewrite history to say that she was never a civil service employee." Instead, plaintiff contends only that the city will no longer prospectively treat her as a civil service employee. Defendant makes a persuasive argument that this does not amount to a claim of a retroactive denial of rights. For these reasons, summary judgment is granted in defendant's favor on plaintiff's claim she was subjected to a retroactive application of the law.

### Substantive Due Process: Arbitrary and Capricious

■ Plaintiff next argues defendant's decision to terminate her employment was arbitrary and capricious and therefore violated her constitutional and statutory rights to substantive due process. *See* U.S. CONST. amend. XIV, § 1; 42 U.S.C. § 1983. Although technically distinct from her procedural due process claims, plaintiff's substantive due process complaint relies on her same argument that she had a protected status in the continued application of the civil service rules. To succeed on a claim based on substantive due process in the public employment context, a plaintiff must show she had a property interest or right in her employment and the public employer's termination of that interest was arbitrary or capricious. *Moulton v. City of Beaumont*, 991 F.2d 227, 230 (5th Cir.1993). As discussed above, plaintiff had no property right in the continued application of the rules once her civil service protection had been removed.

■ Presuming a property right, however, this Court does not find defendant's actions were arbitrary or capricious. City Attorney Martin requested information from the State Commission on Judicial Conduct regarding the ethical conflict inherent in holding the position of both municipal court prosecutor and judge. The Commission forwarded the case of *In re Judge Randy Ellisor*, wherein the Texas Supreme Court determined that a judge may not be also employed as a certified peace officer. Motion for Summary Judgment (docket no. 54), pages 24–25. Such dual employment, the Court found, would not only create an appearance of impropriety in violation of the Texas Code of Judicial Conduct, it would also cast reasonable doubt on the judge's capacity to act impartially as a judge. *Id.*

Plaintiff argues defendant's reliance on *Ellisor* is misplaced for two reasons: (1) law enforcement and prosecutors are not one in the same; and (2) the analysis focused only on the impropriety of plaintiff's judicial role. Regarding the second reason, plaintiff states: "Mr. Martin even admitted that his concerns regarding judicial impartiality and the like were more appropriately those of the city that employed her as a judge, namely the City of Live Oak." This is not an entirely accurate representation of the record. City Attorney Martin did admit in his deposition that he found issues regarding the appearance and impartiality of a judge which would have been for Live Oak instead of San Antonio. Plaintiff's Cross–Motion for Summary Judgment (contained within docket no. 55), deposition of Andrew Martin, Exhibit C, page 20, lines 9–10, "But," he continued:

> [i]t also concerned me as her employer, as a prosecutor, and I remember specifically having this part of the conversation [with plaintiff], about how if you are sitting in the evening as a judge, and a defense attorney makes what you think is a very good argument, and you rule in favor of the defense over a motion by the state, how can you, then, the next morning, go in and make the same argument that the state has made? If in your viewing it and thinking of it as a

judge you've concluded that argument is not a good argument, how can you zealously make that argument the next morning as a prosecutor? So, I had a concern about it also in her capacity as a prosecutor.

*Id.* at lines 10–21. Finally, plaintiff submits an affidavit from an attorney who simultaneously worked as a prosecutor in one municipality and a judge in another. Both this attorney and plaintiff state their opinion that there is no ethical conflict concerning such an arrangement.

Even if this Court agrees with the city attorney's ethics/conflict analysis or accepts all plaintiff's arguments as true, the question in this case is not whether City Attorney Martin correctly interpreted *Ellisor* or whether this Court should side with plaintiff or City Attorney Martin on the substantive issues present in being both a municipal court prosecutor for the City of San Antonio and an alternate municipal court judge for the City of Live Oak. On December 27, 2002, City Attorney Martin sent plaintiff a memo notifying her she would "be terminated from employment as an assistant city attorney for the City of San Antonio unless [he] receive[d] written confirmation from both [plaintiff] and the City Manager of the City of Live Oak that [plaintiff was] not, as of January 10, 2003, or some earlier date, continuing to exercise the duties of a municipal court judge for the City of Live Oak, whether paid, unpaid, full-time or part-time." In the absence of a response, on January 13, 2003, the City of San Antonio terminated plaintiff's employment for insubordination based on her "intentional and willful disregard of [City Attorney Martin's] directive."

Plaintiff was not discharged for challenging City Attorney Martin's decision to refuse her request for outside employment, but for insubordination. "Ours is not to reason why; ours is but to do or die." Alfred Lord Tennyson, *The Charge*

*of the Light Brigade,* in POEMS, II, 225–27 (Hallam Lord Tennyson ed., MacMillan 1908); *see also City of Houston v. Federal Aviation Admin.,* 679 F.2d 1184, 1193 (5th Cir.1982) ("Ours is not to reason why, ours is but to uphold the agency's decision if not arbitrary and capricious."). The fact that the conduct which led to plaintiff's termination "arose because of a dispute" over City Attorney Martin's decision does not alter the "nature of the [insubordination] charge[ ] against her." *See Gergans v. Brown,* 911 F.Supp. 308, 312–13 (N.D.Ill. 1995) (where physician was not discharged for reasons related to his medical competency, but for insubordination and absenteeism, the fact his conduct arose because of dispute over medical competence did not alter nature of charges against him). As plaintiff does not argue, and there is no reason to conclude, defendant could not terminate her employment for insubordination, the proper judicial inquiry is only whether the decision "was made, wisely or not, by a specific exercise of personal judgment and on the basis of factors clearly bearing on the appropriateness of" the decision. *See Spuler v. Pickar,* 958 F.2d 103, 107 (5th Cir.1992) (setting forth standard of review for entitlement to non-arbitrary and capricious decision on tenure).

It is undisputed City Attorney Martin made clear to plaintiff his concerns regarding her request to accept the position of alternate municipal court judge for the City of Live Oak, and she refused to consider the ethical and conflict issues raised. Based on the information provided him, City Attorney Martin declined to grant plaintiff permission to accept the municipal court position. Plaintiff ignored his decision and accepted the job, intending to remain employed with the City of San Antonio as a municipal court prosecutor. Plaintiff's employment was only terminated after she refused to confirm she would not continue to hold the judicial position in

addition to her duties as a prosecutor. Given the circumstances, and even presuming plaintiff had a property interest, this Court does not find defendant failed to exercise professional judgment or that the city acted in an arbitrary and capricious manner when terminating plaintiff's employment. Summary judgment is therefore entered in defendant's favor on plaintiff's substantive due process claim.

IT IS THEREFORE ORDERED that the motion for new trial (docket no. 62) is GRANTED such that summary judgment is entered in defendant's favor on all plaintiff's claims.[8]

IT IS FURTHER ORDERED that plaintiff's motion for attorney's fees (contained within docket no. 61) is DENIED. To the extent defendant's advisory (docket no. 77) is an additional motion, it is DISMISSED as MOOT because it was not relied upon by the Court. Remaining motions pending with the Court, if any, are dismissed as moot.

It is so ORDERED.

---

8. In the Order Regarding Cross–Motions for Summary Judgment (docket no. 59), this Court granted summary judgment in favor of defendants on the remainder of plaintiff's claims brought under 42 U.S.C. section 1983, municipal law and the Texas Open Meetings Act. Plaintiff makes no post-judgment challenge to these rulings.